Jimmy A. JOSEPH, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00356–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 23, 1999.

628

Michael Ray McLane, Houston, for appellant.

Robert F. McStay, Jr., Houston, for appellee.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and BAIRD.*

## OPINION

CHARLES F. BAIRD, Justice (Assigned).

Appellant was charged with the offense of credit card abuse. *See* TEX. PEN.CODE ANN. § 32.31 (Vernon 1994). Appellant pleaded guilty and was assessed a sentence of two years in the state jail facility, probated for two years, and a $500.00 fine. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 15 (Vernon Supp.1999). The State subsequently moved to revoke appellant's community supervision by filing a Motion to Revoke Probation, and shortly thereafter, an Amended Motion to Revoke Probation. The trial court held a hearing on appellant's plea of "not true" and at the conclusion of the hearing, revoked appellant's community supervision and assessed punishment at confinement for two years in a state jail facility. In his appeal from the revocation of his community supervision, appellant raises fourteen points of error. We affirm the trial court's judg-

ment as to appellant's revocation, but we reverse the trial court's judgment as to appellant's punishment and remand the cause with instructions to reform the judgment to reflect any credit for time served.

### I. Factual and Procedural Background

Appellant was represented on his initial charge of credit card abuse by Penny Wymyczack–White. On October 16, 1997, appellant entered a negotiated guilty plea and was sentenced to two years incarceration, probated for two years. On October 27, 1997, the State filed a Motion to Revoke Probation wherein it alleged appellant committed the offense of credit card abuse on or about October 25, 1997. On October 30, 1997, the State filed a First Amended Motion to Revoke Probation alleging appellant violated the terms of his community supervision by committing the aforementioned offense of credit card abuse, and that appellant failed to timely pay restitution to Crime Stoppers. Appellant discharged Wymyczack–White and retained his present counsel, Michael McLane, to represent him in the revocation proceedings.

At the hearing on the State's motion, Pamela Cavazos, a community supervision officer for the Harris County Adult Probation Department testified appellant was placed on probation on October 16, 1997. Appellant's conditions of community supervision included the requirement that appellant pay a $50.00 fee to the City of Houston Crime Stoppers reward fund by October 16, 1997. Appellant did not make the payment on the required date, but did make a $50.00 payment on November 14, 1997.

Debra Rowden, the manager of a Hampton Inn in Houston testified that on October 25, 1997, appellant rented a room, paying cash. Rowden recognized appellant from a previous stay in which he rented a room using a fraudulent credit

* Former Judge Charles F. Baird sitting by assignment.

card. Rowden called the police and met with Houston Police Officers King and Akahoshi, showing them the billing slip for the fraudulent card and room registration signed by appellant. The three went to appellant's room and knocked on the door.[1] After a few moments, appellant opened the door and both Rowden and King smelled the odor of marijuana emanating from the room. King entered the room and observed cigar butts smelling of marijuana in an ashtray on a nearby table. King then arrested appellant for possession of marijuana. King asked appellant for his identification and appellant stated it was in his wallet. King seized appellant's wallet and searched through a number of cards looking for appellant's identification. Within the assortment of cards was a credit card in the name of Lynda Wingate.

Lynda Wingate testified she owned the credit card found in appellant's wallet. She had purchased an item with the card the day before appellant's arrest and believed appellant had been the person who had waited upon her. Wingate did not give appellant permission to possess or use the credit card.

In his case-in-chief, appellant sought to suppress the evidence from the arrest on the ground that the police lacked probable cause to knock on the hotel room door during their investigation. Appellant also moved to "reinstate probation" on the ground that his original trial attorney, Wymyczack–White, had been ineffective in failing to contact all persons upon whom appellant had used a fraudulent credit card, including the Hampton Inn, and make arrangements for reimbursement. Appellant contended trial counsel's failure to resolve appellant's outstanding debts contributed to the investigation at the Hampton Inn, which ultimately led to his arrest and the discovery of Wingate's credit card, which subsequently provided a partial basis for the motion to revoke.

At the conclusion of the hearing, the trial court revoked appellant's community supervision and assessed a sentence of two years confinement.

## II. Motion to Suppress Physical Evidence

Appellant alleges in his first point of error the trial court erred by failing to suppress the evidence of Wingate's credit card found in appellant's wallet because the police lacked probable cause to enter appellant's hotel room based solely upon the smell of marijuana. In his second point of error, appellant contends the trial court erred by failing to suppress the evidence of Wingate's credit card because the search of appellant's wallet violated the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution because it did not fall within the recognized exceptions for a warrantless search.

▄▄▄ In reviewing the trial court's ruling on a motion to suppress evidence, an appellate court should defer to the trial court's ruling on issues involving the application of law to facts, particularly if the resolution of the ultimate question turns on an evaluation of the credibility or demeanor of the witness. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *Victor v. State*, 995 S.W.2d 216, 224 (Tex.App.—Houston [14th Dist.] May 13, 1999, pet filed July 14, 1999). Questions which do not turn upon the application of historical fact to law are reviewed *de novo*. *See Guzman*, 955 S.W.2d at 87–88.

▄▄▄ To justify a warrantless search, the State must demonstrate probable cause existed at the time the search was made, and that exigent circumstances existed which made the procurement of a warrant impractical. *See McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991); *Crane v. State*, 786 S.W.2d 338, 346 (Tex.Crim.App.1990); *Victor*, 995 S.W.2d

---

1. There is some confusion in the record over whether Rowden or King knocked on the hotel room door; both claimed to have done so.

at 224; TEX.CODE CRIM. PROC. ANN. art. 14.05 (Vernon Supp.1999). The test for the existence of probable cause is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Guzman,* 955 S.W.2d at 90 (citing *Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App.1989)).

■ In the present case, the police went to the Hampton Inn after the manager, Debra Rowden, called to make a criminal complaint about appellant's prior use of a fraudulent credit card. A citizen's complaint may be sufficient in itself to prompt further investigation of an offense. *See, e.g., State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd); *Tribble v. State,* 792 S.W.2d 280, 283 (Tex. App.—Houston [1st Dist] 1990, no pet.). Accordingly, Officers King and Akahoshi had sufficient legal basis to investigate Rowden's complaint. Further, while an individual has a right to privacy in a hotel room, *see Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *Moberg v. State,* 810 S.W.2d 190, 194 (Tex.Crim.App.1991); *Taylor v. State,* 945 S.W.2d 295, 298 n. 1 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd), a person's expectation of privacy is not violated when a police officer knocks on a door while investigating the possible commission of an offense. *See Rodriguez v. State,* 653 S.W.2d 305, 307 (Tex.Crim.App.1983) (holding that "Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door. Further, nothing in the statutes or governing constitutional provisions requires any citizen to respond to a knock on his door by opening it") (footnote omitted); *Nored*

*v. State,* 875 S.W.2d 392, 396–397 (Tex. App.—Dallas 1994, pet. ref'd) (holding that police officers' entering onto defendant's property to knock on his door and question him about a stolen bike on his property did not violate Fourth Amendment prohibition against warrantless searches). Thus, while Officers King and Akahoshi would clearly not have been entitled to force open the door to appellant's room, nor compel him to open it and speak with them, there was no Fourth Amendment violation under the present set of facts by Officers King and Akahoshi accompanying Rowden to appellant's room to investigate a complaint of credit card abuse.

■ Nor was there any violation of the Fourth Amendment, article I, section 9 of the Texas Constitution, or Chapter 14 of the Texas Code of Criminal Procedure when the police arrested appellant in his hotel room for possession of marijuana and subsequently discovered the stolen credit card in the search incident to arrest.[2] Both Rowden and King testified the smell of marijuana emanated from the room after appellant opened the door. We are not at liberty to disregard the trial court's fact findings on this matter. *See Guzman,* 955 S.W.2d at 89. An officer may arrest a suspect for an offense committed within his presence. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon Supp.1999). It is not necessary, however, that the officer be certain that the offense was committed as long as he has reasonably trustworthy information to warrant a prudent person in believing that the suspect has committed the offense. *See Beverly v. State,* 792 S.W.2d 103, 105 (Tex.Crim.App.1990). The odor of marijuana may, by itself, supply probable cause for a warrantless arrest. *See Isam v. State,* 582 S.W.2d 441, 444 (Tex.Crim.App.1979); *Jackson v. State,* 745 S.W.2d 394, 396 (Tex.App.— Houston [1st Dist.] 1987, pet. ref'd); *Saenz*

---

**2.** We will address appellant's Fourth Amendment and article I, section 9 arguments together under the same standard because appellant failed to separately argue and brief these contentions. *See Riddle v. State,* 888 S.W.2d 1, 7–8 (Tex.Crim.App.1994); *Arnold v. State,* 873 S.W.2d 27, 29 n. 2 (Tex.Crim.App. 1994).

*v. State*, 632 S.W.2d 793, 795 (Tex.App.—Houston [14th Dist] 1982, pet. ref'd); *Alexander v. State*, 630 S.W.2d 355, 357 (Tex.App.—Houston [1st Dist.] 1982, no pet.). Similarly, the odor of marijuana establishes probable cause for a police officer to search for contraband. *State v. Ensley*, 976 S.W.2d 272, 275 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd).

 Under the appropriate exigent circumstances, police may enter into a residence or similarly protected place following a warrantless arrest. *See McNairy*, 835 S.W.2d at 106; TEX.CODE CRIM. PROC. ANN. art. 14.05 (Vernon Supp.1999). In *McNairy*, the Court of Criminal Appeals held the police did not violate the Fourth Amendment by making a warrantless entry into the defendant's trailer after smelling the odor of a methamphetamine laboratory emanating from the trailer and hearing people running out the back door of the trailer. 855 S.W.2d at 106. The court explained that the possible destruction of the evidence in the time it would have taken the police to obtain a warrant created an exigent circumstance which justified the entry and search of the trailer without a warrant. *See id.* at 107. *See also Covarrubia v. State*, 902 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist] 1995, pet. ref'd).

 We believe the instant case is controlled by *McNairy*. There is sufficient evidence to conclude there was a danger posed by the destruction of evidence before King could obtain a warrant. King testified that after knocking on the door, it took several minutes for appellant to open the door. During this time, King could hear movement within the room. When appellant opened the door, King smelled the "very strong" odor of marijuana. He further stated that it would have taken him a day to obtain a search warrant. Thus, it is clear that King would not have been able to obtain a warrant in time to prevent the possible destruction of evidence. We hold the circumstances were sufficiently exigent to bring King's entry

into the room within an exception to the warrant requirement under article 14.05 of the Texas Code of Criminal Procedure.

 We also hold there was no constitutional violation in searching appellant's wallet following his arrest for possession of marijuana. Police may search a suspect's personal effects, including his wallet, as part of a search incident to arrest. *See Snyder v. State*, 629 S.W.2d 930, 934 (Tex.Crim.App.1982). *See also Stewart v. State*, 611 S.W.2d 434, 438 (Tex.Crim.App. [Panel Op.] 1981). Thus, the search of appellant's wallet, in which King discovered the stolen credit card, was a valid search incident to arrest.

We hold the trial court did not err in concluding the police had probable cause to enter appellant's hotel room to arrest him for possession of marijuana, nor did it err in admitting Wingate's stolen credit card as the fruit of a valid search incident to arrest. Appellant's first and second points of error are overruled.

### III. Motion to Suppress Appellant's Statement

In his third point of error, appellant contends the trial court erred by admitting appellant's statement to the police as well as marijuana obtained from his car following a "consensual search" because the taking of the statement and the search violated the Fourth Amendment, article I, section 9 of the Texas Constitution, article 38.23 of the Texas Code of Criminal Procedure, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 We first note that this point is multifarious because it combines both Fourth and Fifth Amendment claims. *See Marcum v. State*, 983 S.W.2d 762, 767 n. 1 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd) (citing *Bell v. Texas Dept. of Criminal Justice—Institutional Div.*, 962 S.W.2d 156, 157 n. 1 (Tex.App.—Houston [14th Dist.] 1998, pet. filed)) (holding that a point of error which contains more than

one specific ground is multifarious and may be disregarded). Further, as pointed out by the State, appellant is not clear regarding the "statement" to which he refers since no statement was admitted against him at the hearing. Therefore, this ground is inadequately briefed and presents nothing for review. *See Dunn v. State,* 951 S.W.2d 478, 480 (Tex.Crim.App. 1997). Finally, even if this point were not multifarious and inadequately briefed, we would agree with the State that any testimony regarding the alleged marijuana found in the car was not germane to the trial court's decision to revoke probation, which was based upon the new credit card abuse charge and appellant's failure to pay the Crime Stopper's fee. Appellant's third point of error is overruled.

## IV. Waiver of Attorney–Client Privilege

In his fourth point of error, appellant contends the trial court erred in requiring appellant to waive the attorney-client privilege prior to questioning Wymyczack–White in order to establish an ineffective assistance of counsel claim. The State contends appellant expressly waived this point of error during the revocation hearing. The record of the proceeding reveals the following:

> Mr. Botts: ... I'm the attorney for Ms. White, for purposes of the record. And I'm requesting the Court at this time to admonish [appellant] of the possible consequences of him waiving attorney/client privilege and requesting the Court to have [appellant] waive attorney/client privilege on the record under oath.
>
> The Court: We'll get to that when it's appropriate.
>
> Defense counsel: Your Honor, I would like to oppose [appellant] waiving completely his attorney/client privilege. The questions that I have to do with Ms. White are not specific details with regards to anything that could incriminate him, and so I would want that attorney/client privilege to remain intact.

> The questions have more to do with Ms. White's judgment on some of the evidence that we will present.
>
> The Court: Would that not in itself entail her judgment being based upon discussions she had had with the defendant?
>
> Defense Counsel: Well, I don't think that the evidence—that all the questions I'll be asking her will invade the attorney/client privilege.
>
> The Court: All right. The defendant will stand. The defendant will stand. That's you. The witness here—I assume you know based upon conversations with your lawyer was your lawyer. Under Texas law, conversations that you have had with her as your attorney are privileged, which means they cannot and will not be divulged anywhere unless you agree. Do you understand that?
>
> Appellant: Yes.
>
> The Court: Now, your lawyer is calling her as a witness. And that may result in conversations between you and your lawyer that are privileged under Texas law being revealed. And so the only way that this person can testify regarding that information is if you agree to waive your right, waive your privilege to those conversations. Do you understand that?
>
> Appellant: Yes, sir.
>
> The Court: Which may or may not come into play, based on her testimony, and I want to know from you whether you waive that privilege. Otherwise, I'm not letting her testify. You may want to talk to your lawyer before you make the decision.
>
> Defense Counsel: Thank you, Your Honor. Your Honor, prior to his answering your question, are you saying that the waiver of the attorney/client relationship privilege would open the door to ask any question that she wants to? .

The Court: I didn't say that. I'm not the one answering questions. I'm asking questions.

Defense Counsel: All right. [Appellant] waives his attorney/client privilege.

The Court: Is that correct?

Appellant: Yes, Your Honor.

Wymyczack–White subsequently testified on direct examination by appellant about the terms of her representation and their fee arrangement. She was not cross-examined by the State.

## A. Waiver

 We first address the State's contention that appellant waived this point of error. In general, to preserve a complaint for appellate review, a defendant must make a timely and specific request or objection, notifying the trial court of the grounds of the complaint, and the trial court must either expressly or impliedly make an adverse ruling. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App. 1995); Tex.R.App. P. 33.1(a). Appellant clearly expressed his opposition to waiving the attorney-client privilege when calling Wymyczack–White as a witness. The trial court clearly overruled his complaint. When a trial court rules against a defendant's request or objection, further action is generally not required to preserve a complaint for appellate review. *See Tucker v. State,* 990 S.W.2d 261, 262, n. 2 (Tex.Crim.App.1999). While a properly preserved objection may subsequently be waived, *see Tucker,* 990 S.W.2d at 262, we do not believe appellant waived his complaint by agreeing to "waive" the privilege after the trial court's ruling because his "waiver" was compelled in response to the court's ruling. Rule 512 of the Texas Rules of Evidence provides that "[a] claim of privilege is not defeated by a disclosure which was ... compelled erroneously." *See* Tex.R. Evid. 512. Accordingly, appellant's complaint is adequately preserved for our review.

## B. Analysis

 The question, therefore, is whether the trial court erred by requiring appellant to waive the attorney-client privilege before permitting Wymyczack–White to testify. We hold the trial court did not err in requiring the waiver. It is well settled that a client waives the attorney-client privilege when litigating a claim against his attorney for a breach of legal duty. *See West v. Solito,* 563 S.W.2d 240, 245 n. 3 (Tex.1978); *McClure v. Fall,* 42 S.W.2d 821, 824 (Tex.Civ.App.—Waco 1931), *aff'd,* 67 S.W.2d 231 (Tex.1934); *Smith v. Guerre,* 159 S.W. 417, 419–20 (Tex.Civ.App.—Amarillo 1913, no writ). We observe also that the United States Court of Appeals for the Fifth Circuit has long held that a claim of ineffective assistance of counsel by a defendant against a former attorney waives the attorney-client privilege. *See United States v. Ballard,* 779 F.2d 287, 292 (5th Cir.1986); *Laughner v. United States,* 373 F.2d 326, 327 (5th Cir.1967); *Farnsworth v. Sanford,* 115 F.2d 375, 377 (5th Cir.1940).

In *Laughner,* the court specifically held a defendant waives the attorney-client privilege on a claim of ineffective assistance of counsel:

Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. *The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.*

373 F.2d at 327 (emphasis added). *See also Ballard,* 779 F.2d at 292 (holding that "A lawyer may reveal otherwise privileged communications from his clients in order to ... defend himself against charges of improper conduct, without violating the ... attorney-client privilege."(footnotes omitted)).

Appellant called Wymyczack–White as a witness to show she rendered ineffective assistance of counsel by failing to properly investigate several extraneous instances of appellant's fraudulent use of a credit card, and by failing to arrange for reimbursement of the complainants in those cases. Thus, appellant necessarily put in question privileged communications between himself and Wymyczack–White regarding prior instances of appellant's fraudulent use of credit cards. We hold the trial court did not err in requiring appellant to waive the attorney-client privilege. Appellant's fourth point of error is overruled.

### V. Ineffective Assistance of Counsel

In his fifth point of error, appellant contends the trial court erred by denying his motion to modify his community supervision on the grounds that his original counsel was ineffective due to a conflict of interest arising from her flat fee arrangement with appellant.[3]

■■■ Appellant requested the trial court continue him on community supervision, but modify the conditions to include restitution for several extraneous offenses committed prior to his plea in the instant case. On appeal, appellant argues his original trial counsel was ineffective for failing to thoroughly investigate the outstanding cases and arrange for appellant to make restitution on these outstanding cases. Appellant suggests that the flat fee charged by his original counsel rendered her ineffective because it provided a disin-

centive for her to thoroughly address all the outstanding cases.

During appellant's case-in-chief, Joseph Ninan and Sosama Joseph, appellant's parents, testified they paid Wymyczack–White $1250.00 to handle several cases in which appellant had fraudulently used a credit card. Wymyczack–White testified she represented appellant on the instant case for $1250.00, but that fee did not include representation in other potential credit card abuse cases. While appellant made her aware of other outstanding incidents involving his fraudulent use of a credit card, he did not provide her the names and phone numbers of these potential complainants. Wymyczack–White discussed one outstanding case with the prosecutor, who said the State would not press charges on that case.

■■■ A review of an ineffective assistance of counsel claim involves the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App. 1999). In order to prove counsel rendered ineffective assistance of counsel, a defendant must demonstrate: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the final outcome. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Appellant has the burden of proving he was denied effective assistance of counsel by a preponderance of the evidence. *See Ex parte Kunkle,* 852 S.W.2d 499, 505 (Tex.Crim. App.1993); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). An allega-

---

**3.** Although the State contends appellant's complaint is actually limited to the trial court's failure to maintain appellant on community supervision and modify the restitution amount owed, it is nevertheless clear from the context of appellant's argument that his actual complaint is based on ineffective assistance of counsel. Thus, we will treat this point of error as a complaint on the effectiveness of original counsel.

tion of ineffective assistance of counsel will be sustained only if it is firmly founded, and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *See Hernandez,* 988 S.W.2d at 772. Before examining appellant's performance under the first prong of *Strickland,* we must first determine whether trial counsel's representation of appellant extended to the extraneous offenses of which appellant complains.

■■■ The nature of the attorney-client relationship defines an attorney's duties and the professional services to be rendered. *See Klager v. Worthing,* 966 S.W.2d 77, 83 (Tex.App.—San Antonio 1996, no writ)(holding that law firm did not assume duty of supervising client's entire medical care despite agreement for representation in silicone breast implant litigation). *Cf.* TEX. DISCIPLINARY R. OF PROF'L CONDUCT, Rule 1.02 cmt. 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1999) (TEX. STATE BAR R. art. X, § 9) (stating that "The scope of representation provided by a lawyer may be limited ... by the terms under which the lawyer's services are made available to the client."). Clearly, if Wymyczack–White was not retained to represent appellant on the extraneous offenses, then she could not be ineffective, regardless of the fee arrangement.

■■■ There is a clear conflict in the testimony relating to the extent of Wymyczack–White's representation for the fee in question: appellant's parents claimed the fee was for all outstanding cases involving appellant's fraudulent use of credit cards; Wymyczack–White testified the fee was for representation in the instant case only. Where the evidence is of equal weight, we cannot say a defendant has carried his burden of proof by a preponderance of the evidence. *See Barton v. Tharp,* 27 S.W.2d 885, 889 (Tex.Civ.App.—Texarkana 1930, no writ) (citing *Clark v. Hiles,* 67 Tex. 141, 2 S.W. 356, 360–61 (Tex.1886)) (holding that when the evidence is evenly balanced the party having the burden must lose).

*See also Azores v. Samson,* 434 S.W.2d 401, 404 (Tex.Civ.App.—Dallas 1968, no writ) (holding that party bearing burden of proof must produce evidence that existence of a fact is more probable than its non-existence; where existence is equally probable with non-existence, party has failed to carry its burden of proof); *Bartsch v. Ruby,* 229 S.W.2d 105, 106 (Tex. Civ.App.—San Antonio 1950, orig. proceeding [leave denied]) (holding that "When the testimony bearing upon an issue is equally susceptible to two interpretations, the onus of proof is decisive."); *Chanowsky v. Friedman,* 205 S.W.2d 641, 644–45 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n.r.e.) (holding that a party has not carried forth his burden of proof as long as the circumstances proven are equally consistent with the non-existence of the ultimate fact required to be proved).

We therefore hold that appellant has failed to demonstrate by a preponderance of the evidence that Wymyczack–White's representation fell below objectively reasonable standards of practice because he has failed to show her omissions of conduct were within the agreed upon terms of her representation. Appellant's fifth point of error is overruled.

## VI. Findings of Fact and Conclusions of Law

■■■ In his sixth point of error, appellant contends the trial court erred in failing to file findings of facts and conclusions of law in this case. When the trial court revokes a defendant's probation, due process requires specific written findings of fact where a defendant requests findings of fact be made. *See Whisenant v. State,* 557 S.W.2d 102, 105 (Tex.Crim.App. 1977). A trial court's failure to comply with a defendant's request for findings in support of revocation may require reversal, particularly where the court's failure to make findings of fact has impeded appellate review of the court's decision. *See Ford v. State,* 488 S.W.2d 793, 795 (Tex. Crim.App.1972).

In the trial court's Order Revoking Community Supervision, the court wrote, by hand, in the space beside the printed words Paragraph Violated and Grounds for Revocation: "A & I" and referenced the State's First Amended Petition to Revoke Community Supervision. The trial court further wrote, by hand, in the space provided that "Def committed a law violation on 10–25–97" and "Def failed to pay restitution."

While perhaps not a model example of findings of facts and conclusions of law, the trial court's hand written notations on the revocation order adequately inform us of the grounds on which it found appellant violated the terms of his community supervision. Appellant's sixth point of error is overruled.

## VII. Revocation on Grounds Not Alleged in State's Motion

In his seventh point of error, appellant contends the trial court erroneously revoked the community supervision on the ground of possession of marijuana because that offense was not alleged in either of the State's motions to revoke. However, this contention is not supported by the trial record, or by the court's findings in its Order Revoking Probation. Appellant's seventh point of error is overruled.

## VIII. Sufficiency of the Evidence

In his eighth, ninth, tenth, eleventh, and twelfth points of error, appellant contends the evidence was insufficient to prove he violated the terms of his community supervision. Specifically, the eighth point of error contends the evidence was generally insufficient to prove a violation of the terms of his community supervision; the ninth point of error contends the evidence was insufficient to prove he committed the offense of possession of a controlled substance; the tenth point of error contends the evidence was insufficient to prove he committed the offense of credit card abuse; the eleventh point of error contends the evidence was insufficient to prove he intentionally failed to timely pay his Crime Stoppers fee; and, the twelfth point of error contends the evidence was "factually insufficient" to prove he (1) committed the offense of credit card abuse; (2) committed the offense of possession of a controlled substance; or (3) intentionally failed to pay restitution. We will address these challenges together.

The burden of proof in determining questions of evidentiary sufficiency in probation revocation cases is by preponderance of the evidence. *See Cobb v. State,* 851 S.W.2d 871, 874 (Tex.Crim.App. 1993); *Anderson v. State,* 621 S.W.2d 805, 808 (Tex.Crim.App.1981). Appellate review of an order revoking probation is confined to whether the trial court abused its discretion. *See Jackson v. State,* 645 S.W.2d 303, 305 (Tex.Crim.App.1983); *Caddell v. State,* 605 S.W.2d 275, 277 (Tex. Crim.App.1980). The State satisfies its burden of proof when the greater weight of credible evidence before the court creates a reasonable belief that it is more probable than not that a condition of probation has been violated as alleged in the motion to revoke. *See Battle v. State,* 571 S.W.2d 20, 21–22 (Tex.Crim.App.1978). A finding of a single violation of community supervision is sufficient to support revocation. *See Sanchez v. State,* 603 S.W.2d 869, 871 (Tex.Crim.App.1980); *Burke v. State,* 930 S.W.2d 230, 232 (Tex.App.— Houston [14th Dist.] 1996, pet. ref'd). Thus, in order to prevail, appellant must successfully challenge all the findings that support the revocation order. *See Jones v. State,* 571 S.W.2d 191, 193–94 (Tex.Crim. App. [Panel Op.] 1978).

We decline to reach the merits of the ninth point of error because appellant was not charged with violating his probation by the offense of possession of a controlled substance, nor was his probation revoked on that ground. *See* part VII, *supra.* Similarly, appellant's eighth point of error appears to be a challenge to the affirmative links between himself and the marijuana discovered in his hotel room. Because

it is clear to us that appellant's community supervision was not revoked on this ground, we need not address this point of error. Appellant's eighth and ninth points of error are overruled.

■ In his tenth point of error, appellant challenges the sufficiency of the evidence to prove he committed the offense of credit card abuse. The First Amended Motion to Revoke Probation alleged appellant committed the offense of credit card abuse pursuant to section 32.31(b)(4) of the Texas Penal Code. *See* TEX. PEN.CODE ANN. § 32.31(b)(4) (Vernon 1994).[4] In order to prove credit card abuse under section 32.31(b)(4), the State must prove: (1) a person; (2) stole a credit card, or (3) knowing the card has been stolen, (4) receives it with the intent to, (5) use it, sell it, or (6) transfer it to a person other than the issuer or cardholder. *See Ex parte Williams,* 622 S.W.2d 876, 877 (Tex.Crim. App.1981).

■ The evidence at the hearing showed appellant was in possession of a credit card issued to Lynda Wingate. Wingate testified she used her credit card for a purchase the previous day and did not remember the credit card being returned. She believed, but was not certain, that appellant was the individual who had waited on her at the time of the purchase. Wingate did not give appellant permission to possess her credit card. "Evidence that the defendant had the personal, unexplained possession of property recently stolen is sufficient to raise a presumption or inference of guilt and to sustain his conviction for theft of that property." *Prodan v. State,* 574 S.W.2d 100, 102 (Tex. Crim.App.1978). In light of appellant's

unexplained possession of Wingate's credit card, coupled with her testimony, we hold the evidence was sufficient for the trial court to conclude appellant committed the offense of credit card abuse. Appellant's tenth point of error is overruled.

■ Although a finding of any violation is sufficient to uphold the trial court's revocation of probation, *see Burke,* 930 S.W.2d at 232, out of an abundance of caution, we will also address appellant's challenge to the sufficiency of the evidence that he intentionally failed to pay the $50.00 Crime Stoppers fee. When the violation of probation is the defendant's failure to pay court ordered fees, costs, or restitution, the State must prove, by a preponderance of the evidence, that the defendant's failure to pay was intentional. *See Stanfield v. State,* 718 S.W.2d 734, 737–38 (Tex.Crim.App.1986). The trial court may infer that the failure to pay is intentional where a probationer has the ability to pay a fee, but does not do so. *See id.* A defendant's inability to pay is an affirmative defense to the revocation based on the failure to pay supervisory fees and restitution. *See id.;* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 21(c) (Vernon Supp. 1999). Where the defendant raises the affirmative defense of inability to pay, he must prove his inability to pay the fees and restitution by a preponderance of the evidence. *See Stanfield,* 718 S.W.2d at 737; TEX.CODE CRIM. PROC. art. 42.12(d).

■ One of the conditions of probation required appellant to pay $50.00 to the City of Houston Crime Stoppers Reward Fund by October 17, 1997. Pamela Cavazos, the community supervision officer as-

---

4. Specifically, the motion alleged:
 The State would further show the said defendant did then and there violate the terms and conditions of his probation by: committing an offense against the state of Texas, to-wit: On or about October 25, 1997, in Harris County, Texas, the defendant did then and there unlawfully and knowingly steal a VISA CREDIT card owned by the cardholder, Lynda Wingate, with the intent to deprive the

cardholder of the property and without the effective consent of the cardholder.
 It is further presented that in Harris County, Texas [appellant], hereafter styled the Defendant, heretofore on or about October 25, 1997, did then and there unlawfully and knowingly receive with intent to USE a VISA CREDIT card owned by the cardholder, LYNDA WINGATE, knowing the CREDIT card had been stolen.

signed to the trial court testified appellant did not make a timely payment but made the payment on November 14, 1997. The State presented evidence that on October 25, 1997, appellant paid cash for a room at the Hampton Inn.[5] Appellant did not present any evidence of his inability to pay the $50.00 prior to November 14, 1997, and the uncontradicted evidence that he paid $86.58 cash for the hotel room in the week following his sentencing supports the inference that his failure to timely pay the Crime Stoppers fee was intentional. Accordingly, we find the evidence is sufficient to prove appellant violated this term of his community supervision. Appellant's eleventh point of error is overruled.

█ In his twelfth point of error, appellant contends the evidence is factually insufficient. In this point, appellant asks us to employ the standard announced in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996), which holds that when determining whether the evidence is factually sufficient to support the verdict, an appellate court must view the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." The State, however, cites *Johnson v. State*, 943 S.W.2d 83, 85 (Tex.App.—Houston [1st Dist.] 1997, no pet.), which holds that *Clewis* is not applicable in probation revocation cases. Instead, the evidence is examined in the light most favorable to the trial court's order revoking probation. *See id.* We agree. Therefore, having previously held the evidence sufficient in points of error ten and eleven, we overrule appellant's twelfth point of error.

### X. Motion to Suppress Revisited

In his thirteenth point of error, appellant contends the trial court erred in refusing to suppress the evidence presented at

the hearing because there was no exception to the requirement of a search warrant prior to the police knocking on appellant's door. We have previously addressed this ground in our resolution of points of error one and two. Officers King and Akahoshi were investigating a criminal complaint by Rowden of credit card abuse. This in itself was sufficient to warrant further investigation. In Rodriguez v. State, 653 S.W.2d 305, 307 (Tex.Crim.App. 1983), the Court of Criminal Appeals held:

> Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door. Further, nothing in the statutes or governing constitutional provisions requires any citizen to respond to a knock on his door by opening it. Indeed, the very act of opening the door exhibits an intentional relinquishment of any subjective expectation of privacy, particularly when illegal activity may be readily detected by smell and sight by anyone standing at the doorway.

*See also Nored*, 875 S.W.2d at 396–97. Appellant's thirteenth point of error is overruled.

### XI. Credit for Time Served

The fourteenth and final point of error contends the trial court erred in refusing to award appellant any back time credit for the time he spent incarcerated prior to his arrival in a state jail facility. In its Order Revoking Community Supervision the trial court expressly declined to give back time credit and directed that the two year sentence commence upon appellant's arrival at the state jail facility.

### A.

█ The State does not address the merits of this point of error but instead

5. During the hearing, appellant introduced as Defendant's Exhibit 8 a room receipt from the Hampton Inn which showed appellant paid

$86.58 cash for the room on October 25, 1997.

argues that appellant has waived this complaint because he did not request "back time credit" in the trial court. In support of this argument the State relies upon Texas Rule of Appellate Procedure 33.1(a), which imposes the general requirement that an objection be lodged in the trial court to later raise a complaint on appeal. The State's argument had support for a brief time in *Creeks v. State*, 773 S.W.2d 334, 336 (Tex.App.—Dallas 1989, pet. ref'd), which held that the party seeking this type of relief must have first made a request in the trial court. However, in *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd), an en banc opinion, the Dallas Court of Appeals overruled *Creeks* and held the authority of an appellate court to address the merits of this type of complaint is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. *Id.* at 529–530. In *French v. State*, 830 S.W.2d 607, 609 (Tex.Crim.App.1992), the Court of Criminal Appeals adopted the reasoning set forth in *Asberry*, and held an appellate court has authority to reform a judgment when the matter has been called to its attention by any source. *French* was a murder case where the jury made an affirmative finding of a deadly weapon but that finding was not reflected on the judgment. The State did not object in the trial court but subsequently filed a motion in the court of appeals to have the judgment reformed. The court of appeals granted the State's motion and the Court of Criminal Appeals affirmed that decision. *Id.* See also *Williams v. State*, 911 S.W.2d 788, 791 (Tex.App.—San Antonio 1995, no pet.) (opinion on rehearing); *Harris v. State*, 670 S.W.2d 284, 285 (Tex.App.—Houston [1st Dist.] 1983, no pet.) (court of appeals had power to reform judgment to delete unauthorized fine though not requested to do so on appeal).

 Requests for time credits fall within this exception to the general rule requiring an objection in the trial court because those seeking credit for time served are not challenging the conviction but are instead challenging the time necessary to fulfill the sentence. *Ex parte Canada*, 754 S.W.2d 660, 663 (Tex.Crim.App. 1988). Consequently, the issue of time credits can be raised at any time; it is even a proper subject for post-conviction writ of habeas corpus. *Id.,* (citing *Ex parte Henson*, 731 S.W.2d 97 (Tex.Crim. App.1987)). Therefore, we hold the error, if any, was not subject to being waived for failing to object in the trial court.

**B.**

 We now turn to the merits of this point of error. Appellant cites us to the case of *Greenwood v. State*, 948 S.W.2d 542 (Tex.App.—Fort Worth 1997, no pet.), as support for his request for back time credit. In *Greenwood*, the trial court revoked the defendant's community supervision and, as in the instant case, ordered sentence to commence upon the defendant's receipt in the state jail facility. *Id.* at 546. Before the court of appeals, the defendant contended she was entitled to credit for several periods of incarceration. The court of appeals agreed in part. We find two portions of the *Greenwood* holding are relevant to the instant case. First, the court of appeals held Greenwood was entitled to credit for the time she spent in confinement between her initial arrest and the trial of her case where she was accorded probation because she was unable to post bond due to her indigence and she was assessed the maximum sentence. *Id* at 545–46 (citing *Ex parte Harris*, 946 S.W.2d 79 (Tex.Crim.App.1997)). Second, the *Greenwood* court held the defendant was entitled to credit for the time she spent in confinement after the revocation of her probation while she was awaiting transfer to a state jail facility. 948 S.W.2d at 546–47. We are persuaded by the reasoning and rationale of the *Greenwood* court and hold appellant is entitled to these terms of confinement, if any.

Additionally, in *Ex parte Bates,* 978 S.W.2d 575, 578 (Tex.Crim.App.1998), the Court of Criminal Appeals held an individual is entitled to credit for the time spent in confinement between the arrest on the State's motion to revoke probation and sentencing. The *Bates* Court reasoned that "denying credit for such periods of confinement [between arrest on a motion to revoke and sentencing] would violate due course of law under Art. I, Sec. 19 [of the Texas Constitution]." *Id.; see also Jimerson v. State,* 957 S.W.2d 875 (Tex.App.—Texarkana 1997, no pet.). Similarly, we hold appellant is entitled to credit for any time spent in confinement between his arrest on the motion to revoke probation and sentencing.

The fourteenth point of error is sustained.

## XII. Conclusion

In conclusion, the trial court's judgment of revocation is affirmed. We remand the case to the trial court with instructions to reform the judgment to reflect any credit for time served in accordance with this court's opinion. *See* TEX.CODE CRIM. PROC. ANN. art. 42.01, sec. 1(18).