Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

Nos. 04-11-00832-CR & 04-11-00902-CR

Terrance Lee **HARVEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2009CR10393A & 2005CR3696A
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  November 7, 2012

AFFIRMED

Appellant, Terrance Lee Harvey, was convicted of murder by a jury and sentenced to forty-five years' confinement.  Subsequent to his conviction for murder, his deferred adjudication term for a previous offense was revoked and he was sentenced to ten years' confinement to run concurrently with the forty-five year term.  On appeal, appellant contends (1) the evidence was insufficient to convict him of murder based on a theory of conspiracy, and (2)

because the evidence was insufficient to convict him of murder, his ten year sentence based on the motion to revoke his term of deferred adjudication should be reversed. We affirm.

**SUFFICIENCY OF THE EVIDENCE**

Appellant was charged with the murder of Jimmy Wilson. However, Shann Rowan was the one who actually fired shots at Wilson, resulting in his death. The charge given to the jury provided several theories on which to convict appellant, including a theory that appellant could be convicted of the murder of Wilson if the jury found that appellant entered into a conspiracy with Rowan to commit the felony offense of aggravated assault and the "offense of murder was committed in furtherance of the unlawful purpose to commit aggravated assault and was an offense that should have been anticipated as a result of the carrying out of the conspiracy to commit aggravated assault." In his first issue on appeal, appellant contends the evidence was insufficient to support a guilty verdict based on this theory of conspiracy.

A person commits criminal conspiracy if, with intent that a felony be committed he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and he or one or more of them performs an overt act in pursuance of the agreement. TEX. PENAL CODE ANN. § 15.02(a) (West 2010). If in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *Id*. § 7.02(b).

In reviewing for legal sufficiency, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.

Crim. App. 2010). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the jury's credibility and weight determinations, and to their duty to resolve conflicts in the testimony. *Id.* We defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 8–9 (Tex. Crim. App. 2000) (en banc), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893, 912–13 (Tex. Crim. App. 2010).

The State introduced the testimony of ten witnesses at trial, including the testimony of appellant's wife, Roxanna, appellant's friend and party to the crime, Dominque Lenzy, detectives who worked on the case, and Antonio Herrera, a witness to the crime. The evidence presented established that on July 7, 2009, appellant and his wife, Roxanna, went to a Citgo gas station in Roxanna's vehicle. At the gas station, Jimmy Wilson and appellant got into an altercation and Wilson tried to run appellant over with his vehicle. Appellant and Roxanna left the gas station. Wilson pursued them and pulled up next to appellant and Roxanna at a stop light where Wilson threw a knife at their vehicle, hitting the car window. Appellant and Roxanna continued driving until they got to their apartment complex. When they arrived, Wilson was waiting for them at the apartment entrance. Appellant got out of the vehicle and approached Wilson, but when he noticed Wilson had a knife he got back in the vehicle and told Roxanna to drive him to a nearby H.E.B.

On the way to H.E.B., appellant made phone calls to his friends for help. At trial, appellant's friend, Lenzy, testified that he had heard about appellant's altercations with Wilson

and he called Roxanna's phone to speak with appellant to ask him what had occurred. Lenzy testified that appellant asked him to meet at a nearby H.E.B. Lenzy arrived at the H.E.B and brought Shann Rowan and Patrick Payne, both acquaintances of appellant. Appellant instructed Roxanna to leave her vehicle in the parking lot of H.E.B. and to get a ride home with a friend so Wilson would not see her arrive at their apartment complex in the same vehicle they had been driving earlier that day. Roxanna complied and left the parking lot with a friend.

Lenzy testified that, after Roxanna left, appellant talked about what had happened with Wilson and appellant stated, "[h]e was going to pop this fool because he knows where Roxanna stays." Lenzy said that he knew this "meant [appellant] was going to have to shoot [Wilson]." After their discussion, appellant, Lenzy, Rowan, and Payne all rode to Rowan's house to get guns. Lenzy testified that he, Payne, and appellant stayed in the car while Rowan went to get the guns from inside his house. Rowan placed the weapons in the trunk of the car. All four men then drove back to the apartment complex where Roxanna lived and where appellant had seen Wilson earlier that day. Lenzy said appellant told him where to park the car, and also told him to open the trunk, where the guns were located. Wilson appeared and appellant got out of the vehicle and began arguing with him. Lenzy testified appellant had a .380 pistol with him. Lenzy said that, a short time later, as Wilson was walking away, Rowan went to the trunk of the car, grabbed a .22 rifle, and started shooting at Wilson. Rowan shot Wilson five times in the head and chest. Wilson died of his injuries. The four men fled the scene in their vehicle. Lenzy said appellant told him his .380 pistol had jammed during the incident. Lenzy testified that after the shooting they all went back to Rowan's house and later, Rowan and Payne discussed what they were going to do with the guns.

Herrera, a witness who lived in the apartment complex, testified that as he was driving, he noticed a group of men having "some kind of dispute" with a person who was by himself and he thought it seemed "unusual." Herrera said the last thing he saw was the person by himself walking away from the group. As Herrera continued to drive, he heard gunshots and then saw four males speeding off in a car together "as if they wanted to get away from the area." Herrera wrote down the license plate number of the car, which matched the Ford Focus driven by Lenzy.

Because Lenzy exchanged his cooperation and testimony against appellant for a lesser charge of aggravated assault in a plea deal, appellant attacked Lenzy's credibility on cross-examination.[1] The record also reveals conflicts in Lenzy's testimony regarding the weapons. During direct examination, Lenzy stated he knew appellant was going to shoot Wilson, they went to Rowan's house to get guns, appellant told him to open the trunk where the guns that Rowan picked up were located, and appellant had one of these guns with him during the shooting. However, on cross-examination, Lenzy said appellant did not ask Rowan to pick up guns and did not know Rowan got guns from inside his house. Finally, during closing argument, appellant's attorney told the jury: "I want you to look at the credibility of the testimony of Dominque Lenzy because that is important in this case in you determining whether or not Terrance Harvey acted as a conspirator or as a party to make sure that Jimmy got killed." On review, however, we defer to the jury's assessment of a witness's credibility and to the jury's ability to resolve conflicts in a witness's testimony and we view the evidence in the light most favorable to the verdict. *See Hooper*, 214 S.W.3d at 13.

The record contains ample evidence to support appellant's conviction under a conspiracy theory as a party to murder. The record shows that after appellant's altercations with Wilson

---

[1] We note that, on appeal, appellant does not challenge the sufficiency of the evidence to corroborate any accomplice's testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005).

during the afternoon, appellant asked Lenzy and his friends to meet him at the H.E.B. for help. Lenzy testified appellant told them he was going to have to "pop this fool." Appellant got in Lenzy's Ford Focus with the men and went with them to pick up guns before confronting Wilson. Appellant then directed them to the apartment complex where he had seen Wilson earlier that afternoon, and told Lenzy where to park the car once they got there. Appellant told Lenzy to open the trunk, where the guns were located. Herrera witnessed the men confronting Wilson, heard the shots fired, and saw the men speed off in Lenzy's vehicle together. We conclude, after viewing the evidence in the light most favorable to the verdict, that a rational juror could have found the essential elements of the offense with which appellant was charged.

### MOTION TO REVOKE DEFERRED ADJUDICATION

On September 12, 2005, appellant pled nolo contendere to the offense of possession of a controlled substance and was placed on deferred adjudication community supervision for a term of four years. Following the murder of Wilson on July 7, 2009, the State filed a motion to enter adjudication of guilt and revoke appellant's community supervision. The motion listed four violations of appellant's community supervision stating appellant (1) committed the offense of murder, (2) possessed a firearm, (3) failed to report an arrest, and (4) failed to pay the fine associated with his probation. A hearing was held and appellant pled "true" to the firearm violation and to failure to pay the fine, and pled "not true" to committing the offense of murder. The State abandoned the failure to report an arrest. Following appellant's conviction of murder, the trial court found all three allegations "true," adjudicated him guilty, and sentenced appellant to ten years' confinement to run concurrently with his forty-five year term for murder.

In his second issue on appeal, appellant contends the ten year sentence imposed after his community supervision was revoked and guilt was adjudicated should be reversed because the

evidence was legally insufficient to support his conviction of murder, which was one of the grounds for revoking his community supervision. "The burden of proof in determining questions of evidentiary sufficiency in probation revocation cases is by preponderance of the evidence." *Joseph v. State*, 3 S.W.3d 627, 640 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art 42.12 [781d] § 5(b) (West 2012) ("This determination is reviewable in the same manner as a revocation hearing conducted under Section 21 of this article in a case in which an adjudication of guilt had not been deferred."). We review a trial court's order revoking probation under an abuse of discretion standard. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984) (en banc). At the revocation hearing, appellant pled "true" to possessing a firearm and to failure to pay fines. These violations alone are sufficient to justify revocation. *See Champion v. State*, 590 S.W.2d 495, 498 (Tex. Crim. App. 1979). Also, because we determine the evidence was legally sufficient to convict appellant of murder, we also conclude the trial court did not abuse its discretion in finding appellant violated his community supervision by committing the offense of murder. We therefore affirm the ten year sentence imposed based upon a finding of three violations of appellant's community supervision.

## CONCLUSION

We conclude the evidence was legally sufficient to find appellant guilty of murder under a conspiracy theory. Because appellant pled "true" to two other violations and we determine the evidence was sufficient to find appellant violated his community supervision by committing the offense of murder, we also conclude the trial court did not abuse its discretion by imposing a ten year sentence for his possession of a controlled substance offense. We affirm.

Sandee Bryan Marion, Justice

Do not publish