**Opinion issued March 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00190-CR

————————————

**ERNEST KIZEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1338327**

---

## MEMORANDUM OPINION

In 2012, appellant, Ernest Kizee, pleaded guilty to the third-degree felony

offense of assault on a person with whom he had a dating relationship—second

offense.[1]  The trial court deferred adjudication of guilt and placed appellant on community supervision for three years.  In November 2013, the State moved to adjudicate guilt, alleging that appellant had violated four different conditions of his community supervision.  At a hearing on the motion to adjudicate, the State presented evidence that appellant had violated two conditions, and the trial court found that appellant had violated those two conditions of his community supervision.  The trial court revoked appellant's community supervision, adjudicated him guilty of the charged offense, and assessed punishment at three years' confinement.  In his sole issue, appellant contends that the State failed to present sufficient evidence to support the revocation of his community supervision.

We affirm.

**Background**

In 2012, pursuant to an agreed recommendation on punishment, appellant pleaded guilty to the offense of assault on a person with whom he had a dating relationship—second offense.  The trial court deferred adjudication of guilt and placed appellant on community supervision for three years.  The terms and conditions of appellant's community supervision required him to "[c]ommit no offense against the laws of this or any other State or of the United States" and to "[w]ork faithfully at suitable fulltime employment and present written verification

---

[1]     *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (Vernon Supp. 2014).

2

of employment . . . to your Community Supervision Officer on each reporting date." The terms and conditions stated, in all capital letters, "YOU MUST PROVIDE A PAYCHECK STUB THAT LISTS THE NUMBER OF HOURS WORKED, RATE OF PAY AND TAXES WITHHELD AT EACH OFFICE VISIT."

In November 2013, the State moved to adjudicate guilt, alleging that appellant had violated four separate conditions of his community supervision. Specifically, the State alleged that appellant had committed a new offense against the laws of Texas by causing bodily injury to Vanesa Watts, a person with whom appellant had a dating relationship, by applying pressure to Watts's neck and impeding her normal breathing or circulation. The State also alleged that appellant had failed to obtain suitable employment and provide proof of his employment at each office visit to his community supervision officer.[2]

The trial court held a hearing on the State's motion to adjudicate guilt. Joy Henderson, appellant's community supervision officer, testified that appellant agreed to the conditions of community supervision. One of the conditions required

---

[2] The State also alleged that appellant had violated two other conditions of his community supervision: (1) a prohibition against walking, driving by, or presenting himself within 200 yards of a specified address; and (2) a requirement that he participate in an electronic monitoring program by wearing a GPS device. The State abandoned these allegations before the hearing on its motion to adjudicate guilt and therefore did not present any evidence concerning appellant's alleged violation of these two conditions.

3

appellant to be "gainfully employed," and, when asked by the State whether appellant had complied with that condition, Henderson testified, "Not completely." Henderson stated that appellant was employed at the time that he began community supervision, but several months into his supervision period, he stopped providing proof of employment. Henderson testified that appellant began a succession of jobs in April 2013, but after that point in time, he never provided actual proof of employment, which was one of the conditions of his community supervision. She stated that it was appellant's responsibility to provide proof of employment at each office visit.

On cross-examination, Henderson agreed that, after April 2013, appellant reported to her during his office visits that he was employed at various jobs. However, he did not provide official documentation of his employment. Henderson acknowledged that although appellant had been violating the employment condition since April 2013, she did not notify the court of the violations until September 2013. She agreed that she was supposed to notify the court of violations of the terms and conditions of a defendant's community supervision "[a]s soon as the violations occur."

Vanesa Watts testified at the hearing that she and appellant were in a dating relationship during October 2013. On the night of October 5, 2013, she and appellant attended a party at a friend's apartment. Both Watts and appellant had

4

been drinking, and during the course of this party appellant held a knife to Watts's throat and threatened her. Watts and appellant spent the night at Watts's friend's apartment, and the next day appellant woke Watts up and started yelling at her. Watts left the apartment to go to the store. On her way back to the apartment, she called appellant and told him that he needed to leave and that she did not want to date him anymore.

When Watts returned to the apartment, appellant was angry with her, and they began arguing. During this argument, appellant pushed Watts onto the couch, pinned her arm to the couch, and started choking her by putting his hands around her throat. Watts testified that appellant's hands around her neck made it difficult for her to breathe. Watts was in pain, and appellant left visible scratches on her arm and her neck.

On cross-examination, Watts acknowledged that she has a criminal history and that she has been diagnosed with bipolar disorder. Watts also testified that she takes medication for her illness that she is not supposed to mix with alcohol.

The trial court found that appellant violated two conditions of his community supervision: (1) he "committed a law violation against the state," and (2) he "failed to maintain suitable employment." The trial court adjudicated appellant guilty of the charged offense and assessed punishment at three years' confinement. This appeal followed.

**Revocation of Community Supervision**

In his sole issue, appellant contends that the trial court abused its discretion in revoking his community supervision because the State failed to present sufficient evidence to support the court's finding that he violated two conditions of his community supervision.

### A. *Standard of Review*

A trial court's decision to proceed to an adjudication of guilt and revoke deferred-adjudication community supervision is reviewable in the same manner as a trial court's revocation of ordinary community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (Vernon Supp. 2014); *Lawrence v. State*, 420 S.W.3d 329, 331 (Tex. App.—Fort Worth 2014, pet. ref'd). At a hearing to revoke a defendant's community supervision, the State must prove by a preponderance of the evidence that the defendant has violated a condition of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)); *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "[A]n order revoking probation must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his

6

probation." *Rickels*, 202 S.W.3d at 763–64 (quoting *Scamardo*, 517 S.W.2d at 298); *Silber*, 371 S.W.3d at 611.

Our appellate review of an order revoking a defendant's community supervision is limited to determining whether the trial court abused its discretion in ruling that the defendant violated the terms of his community supervision. *Rickels*, 202 S.W.3d at 763 (quoting *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)); *Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We examine the evidence in the light most favorable to the trial court's order. *Duncan*, 321 S.W.3d at 57; *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "The trial court is the exclusive judge of the credibility of the witnesses and must determine whether the allegations in the motion to revoke are sufficiently demonstrated." *Canseco*, 199 S.W.3d at 439; *see also Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("Reconciliation of conflicts and contradictions in the evidence was within the province of the trial court, and such conflicts will not call for reversal if there was enough credible testimony to support the conviction.").

A finding of a single violation of the terms and conditions of community supervision is sufficient to support revocation. *Silber*, 371 S.W.3d at 611; *Joseph v. State*, 3 S.W.3d 627, 640 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) ("We need not

address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."). Thus, to prevail on appeal, the defendant must successfully challenge all of the findings that support the revocation order. *Silber*, 371 S.W.3d at 611; *Joseph*, 3 S.W.3d at 640 (citing *Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. 1978)).

### B. Commission of New Offense

In its motion to adjudicate guilt, the State alleged that appellant violated the terms and conditions of his community supervision by, among other things, committing a new offense against the laws of Texas, specifically, by assaulting Vanesa Watts, a person with whom he had a dating relationship. To prove this violation as alleged in the motion to adjudicate, the State had to establish, by a preponderance of the evidence, that appellant intentionally and knowingly caused bodily injury to Watts, a person with whom he had a dating relationship, by "impeding the normal breathing or circulation of the blood of [Watts] by APPLYING PRESSURE TO [WATTS'S] NECK." *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (Vernon Supp. 2014) (providing that assault is third degree felony if committed against person with whom defendant has dating relationship and defendant commits offense by intentionally, knowingly, or recklessly impeding complainant's normal breathing or circulation of blood by applying pressure to complainant's neck); TEX. FAM. CODE ANN. § 71.0021(b) (Vernon

8

2014) (defining "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature"). The testimony of a single eyewitness may provide sufficient evidence to support a finding that the defendant violated a condition of community supervision. *See Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (stating that it is "well established" that conviction may be based on testimony of single eyewitness); *Lewis v. State*, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet. ref'd) (stating same).

At the hearing on the State's motion to adjudicate, Vanesa Watts testified that she and appellant were in a dating relationship in October 2013. Watts stated that she and appellant were staying at a friend's apartment on the night of October 5, 2013. During a party at this apartment, appellant threatened Watts by holding a knife to her throat. The next day, appellant woke her up by yelling at her. Watts left her friend's apartment to go to the store, and on her way back she called appellant and told him to remove his belongings from her friend's apartment because she felt that he "was an abusive guy" and she did not want to date him anymore.

When Watts returned to the apartment, she testified that appellant was there and was angry with her. Watts and appellant argued, and during the course of this argument appellant pushed Watts to the couch, pinned her arms, and choked her by

9

placing his hands around her throat. Watts testified that appellant's actions caused her pain and made it difficult for her to breathe, and she had visible scratches on her arm and her neck after the incident.

The State, therefore, presented evidence that appellant intentionally or knowingly caused bodily injury to Watts, a person with whom he had a dating relationship, by applying pressure to her neck and impeding her breathing or circulation. *See Castilla v. State*, 374 S.W.3d 537, 539 (Tex. App.—San Antonio 2012, pet. ref'd) ("An eyewitness's testimony, alone, can be legally sufficient to support a guilty verdict."); *Davis*, 177 S.W.3d at 359.

Appellant argues, however, that Watts was not a credible witness because she testified that she and appellant had been drinking on the date of the offense, she took medication for bipolar disorder that she was not supposed to mix with alcohol, and she had a "substantial criminal history." As the State points out, Watts testified that she and appellant had been drinking on the night of October 5, 2013, the day before the new offense alleged in the State's motion to adjudicate occurred. She did not testify that she and appellant had been drinking on October 6, 2013. Watts also acknowledged her prior criminal history and her bipolar diagnosis, but she denied that she had ever been "momentarily out of control" because of her illness. She also testified that she does not take her bipolar medication when she drinks alcohol.

10

As the fact finder at a hearing on a motion to adjudicate guilt, the trial court is the exclusive judge of the credibility of the witnesses. *See Canseco*, 199 S.W.3d at 439. It was therefore within the sole province of the trial court to consider Watts's testimony and evaluate her credibility. The trial court was free to credit Watts's testimony that she was not drinking at the time appellant committed the new offense, that she had not mixed her medication with alcohol at the time of the new offense, and that appellant committed the new offense when he pushed her onto a couch and choked her by wrapping his hands around her neck. *See id.*

Viewing the evidence in the light most favorable to the trial court's ruling, as we must, we conclude that the trial court reasonably could have concluded that the State proved, by a preponderance of the evidence, that appellant violated at least one of the terms and conditions of his community supervision. *See Rickels*, 202 S.W.3d at 763–64. We therefore hold that the trial court did not abuse its discretion in revoking appellant's community supervision and adjudicating him guilty of the charged offense.

We overrule appellant's sole issue.[3]

---

[3] Because we have concluded that the State established, by a preponderance of the evidence, that appellant violated one of the terms and conditions of his community supervision by committing a new offense against the laws of the state of Texas, we need not address whether the State presented sufficient evidence that appellant violated the condition requiring him to be gainfully employed by not presenting proof of employment at each visit to his community supervision officer. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) ("We need not

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).

---

address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."); *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that finding of single violation of terms of community supervision is sufficient to support revocation).