Affirmed and Memorandum Opinion filed May 22, 2007








Affirmed and Memorandum Opinion filed May 22, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00230-CR

____________

 

DAVID MICHAEL GALINDO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 807959

 



 

M E M O R A N D U M   O P I N I O N

Appellant David Michael Galindo appeals the trial court=s order revoking
his probation and sentencing him to seven years= confinement for
the underlying offense of sexual assault.  In four issues, appellant complains
of several of the trial court=s evidentiary rulings and asserts the
evidence is insufficient to support the revocation.  We affirm.

                                                  Background

The State filed a motion to revoke appellant=s probation,
alleging he violated the terms of his probation by intentionally and knowingly
engaging in sexual contact with his then five-year-old daughter, E.G. 
Appellant and E.G.=s mother did not live together, and E.G.
lived with her mother.  E.G.=s maternal grandmother, Martha Ibanez,
often cared for E.G. while her mother was working.  On the evening of Sunday,
April 10, 2005, Ibanez was bathing E.G. and noticed that E.G. closed her legs
when Ibanez attempted to wash her.  When Ibanez observed E.G.=s behavior, Ibanez
asked her who had hurt her there to make her scared.  E.G. told Ibanez, AMy daddy does
that.  My daddy hurts me,@ and then said that he had put his fingers
in her.  Upon further questioning, E.G. told Ibanez that the last time it
happened was earlier that day during a visitation with appellant.  E.G. said
that appellant had gotten on top of her on the floor after her mother went to
sleep on the couch while watching television in the same room.

Ibanez took E.G. to Texas Children=s Hospital later
that evening, where she was examined by Nicole Triggs, a registered nurse and
certified pediatric sexual assault examiner.  During the examination, E.G.,
while pointing to her vagina, told Nurse Triggs that last night, AMy daddy did
something bad to me.  He put his hands in me, in my body.@  Nurse Triggs=s examination
revealed nothing abnormal, which did not surprise her, based on the sexual
contact E.G. described.

Ibanez took E.G. to the Children=s Assessment
Center for a videotaped interview on May 2, 2005.  During the interview, E.G.
stated that her father hurt her by touching her body.  Many of the details of
E.G.=s statements were
conflicting or unclear.  For example, she stated that the touching happened
while her mother was in the restroom but also stated that he did it where her
mother could see it and that her mother told him to stop.  E.G. also stated
that it happened Ayesterday, a long time ago@ and that it
lasted A50 years old.@








At the revocation hearing, both Ibanez and Nurse Triggs
testified and, over objection,[1]
repeated E.G.=s statements to them regarding appellant touching
her.  E.G., who was six at the time of the hearing, took the stand but had
difficulty testifying.  She eventually indicated by shaking her head that no
one, including her father, had ever touched her inappropriately.  The State
offered the videotape interview, first for impeachment and then as substantive
evidence under Code of Criminal Procedure article 38.071.  The trial court
admitted and reviewed the videotape.  During cross-examination, E.G. again
denied that her father had ever hurt her.

Appellant testified and denied that he had ever sexually
abused E.G.  E.G.=s mother testified that she never saw
appellant touch E.G. inappropriately, appellant was never alone with E.G.
during the visit, and she did not fall asleep any time during the visit.  E.G.=s brother, who was
also present during the visit, corroborated the mother=s testimony. 
Appellant also presented an expert psychologist, Dr. Jerome Brown, who
testified that based on his examination of appellant=s file and the
results of a battery of psychological tests, he could find no psychological
explanation for why appellant would have committed indecency with a child.

The trial court found that appellant violated the terms and
conditions of his probation, revoked probation, and sentenced him to seven
years= incarceration. 
In four issues, appellant alleges that the trial court abused its discretion in
(1) revoking appellant=s probation because the evidence is
insufficient to support revocation, (2) finding that E.G. was unavailable to
testify and in admitting the videotaped interview, (3) excluding evidence that
E.G. made prior false allegations of sexual abuse, and (4) admitting testimony
from a psychologist about appellant=s criminal
history.








                                                      Analysis

A.  Sufficiency of the Evidence

We review a trial court=s order revoking
probation under an abuse of discretion standard.  See Rickels v. State,
202 S.W.3d 759, 763 (Tex. Crim. App. 2006); Moore v. State, 11 S.W.3d
495, 498 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  In
conducting our review, we consider all the evidence in the light most favorable
to the trial court=s finding to determine whether the trial
court could have reasonably found that appellant violated the terms and
conditions of his probation by a preponderance of the evidence.  See Rickels,
202 S.W.3d at 763B64; Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. 1981); Moore, 11 S.W.3d at 498.  The State
satisfies its burden of proof  when the greater weight of credible evidence
before the court creates a reasonable belief that it is more probable that the
defendant has violated a condition of probation.  Rickels, 202 S.W.3d at
763B64; Joseph v. State, 3 S.W.3d 627, 640 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  It is the trial
court=s duty to judge
the credibility of the witnesses and determine whether the allegations in the
motion to revoke are true.[2] 
See Garrett, 619 S.W.2d at 174; Moore, 11 S.W.3d at 498.








In his first issue, appellant contends the evidence is
insufficient to support the revocation order.  He emphasizes that the only
evidence against him is the testimony of Ibanez and Nurse Triggs, which was
based on a story that E.G. recanted, and the videotaped interview, which was
also recanted and was inadmissible (as he alleges in his second issue below).[3] 
He argues that E.G.=s recantation, in combination with the
lack of physical evidence proving he committed the offense and the consistency
of his testimony with the testimony of E.G.=s mother and
brother indicating he could not have committed the offense as alleged, show
that the trial court=s finding is not supported by the totality
of the evidence.  Appellant further attempts to bolster the credibility of the
recantation by arguing that E.G. was older and better able to distinguish
fantasy from reality at the time of the hearing and that she could not have
been influenced by her father or his attorney to change her story because they
did not have access to her.








When a witness recants, it is impossible to know which
version of her story is true.  Ex parte Tuley, 109 S.W.3d 388, 401 (Tex.
Crim. App. 2002).  Thus, it is left to the fact finder to determine whether to
believe the original statement or the recantation.  See Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); Fernandez v. State,
805 S.W.2d 451, 456 (Tex. Crim. App. 1991); Sudds v. State, 140 S.W.3d
813, 818 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  In
other words, a fact finder is entitled to disbelieve a recantation.  See
Sudds, 140 S.W.3d at 818 (AThe jury is not
only entitled to resolve conflicts but can even choose to disbelieve any
recantation.@).  Appellant essentially requests that we declare
E.G.=s initial
statement unreliable as a matter of law.  However, it is not our function to
attempt to determine which version of the story we would have believed had we
been the fact finder.  See Fernandez, 805 S.W.2d at 456 (AFor the Court of
Appeals . . . to say that this witness=[s] hearsay
testimony has no probative value in light of her in-court recantation was an
improper attempt to reweigh the evidence to conform to their own opinion of the
credibility of the hearsay and their own belief of the probative value of that
testimony.@).

Further, the testimony from Nurse Triggs and Ibanez is
substantive evidence of guilt.[4] 
See Gregory v. State, 56 S.W.3d 164, 182B84 (Tex. App.CHouston [14th
Dist.] 2001, pet. dism=d) (holding testimony from examining nurse
repeating child=s statements admissible under Evidence
Rule 803(4) in indecency with a child case); Ex parte Tuley, 109 S.W.3d
at 401 (holding that Aan outcry statement [under Texas Code of
Criminal Procedure article 38.072] is reliable evidence of guilt@); Rodriguez v.
State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (same).  Indeed, outcry
evidence is sufficient to support a conviction beyond a reasonable doubt, which
is a higher evidentiary standard than the preponderance standard required in
probation revocation cases.  See Jensen v. State, 66 S.W.3d 528, 534
(Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (noting that an
Aoutcry statement
from a child victim, by itself, can be sufficient to sustain a conviction for
aggravated sexual assault@); see also Jackson v. State, 110
S.W.3d 626, 631 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (A[A] criminal
conviction, which requires proof beyond a reasonable doubt, may rest on hearsay
despite the lack of the complainant=s testimony or
even the complainant=s recantation.@); Moore,
11 S.W.3d at 498 (stating that grounds for probation revocation must be proven
by a preponderance of the evidence).








The trial court observed the witnesses= demeanor, made
credibility determinations, and resolved conflicts in the evidence.  Viewing
the evidence in the light most favorable to the trial court=s finding, we
conclude the evidence is sufficient to provide by a preponderance of the
evidence that appellant violated the terms and conditions of his probation by
committing indecency with a child.  Thus, the trial court did not abuse its
discretion in revoking appellant=s probation, and
we overrule appellant=s first issue.

B. 
Admission of the Videotape

In his second issue, appellant complains that the trial
court erred in admitting E.G.=s videotaped interview.  Article 38.071 of
the Code of Criminal Procedure allows a trial court to admit a recording of a
prior oral statement of a victim under thirteen years old if the court
determines that the child is Aunavailable to testify in the presence of
the defendant@ in certain categories of cases, including indecency
with a child.  See Tex. Code
Crim. Proc. Ann. art. 38.071, '' 1, 8 (Vernon
2005).  Article 38.071 further provides:

In making a determination of unavailability under this article, the
court shall consider relevant factors including the relationship of the
defendant to the child, the character and duration of the alleged offense, the
age, maturity, and emotional stability of the child, and the time elapsed since
the alleged offense, and whether the child is more likely than not to be
unavailable to testify because:

(1) of emotional or physical causes, including the confrontation with
the defendant; or

(2) the child would suffer undue
psychological or physical harm through his involvement at the hearing or proceeding.  


Id. ' 8(a).  We review
a trial court=s unavailability determination for an abuse of
discretion.  See Mitchell v. State, No. 01-04-00853-CR, __ S.W.3d __,
2006 WL 3804443, at *4 (Tex. App.CHouston [1st
Dist.] Dec. 28, 2006, no pet. h.); Laredo v. State, 194 S.W.3d 637, 639
(Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).








When the prosecutor first called E.G. to the stand, she was
unable to testify at all.  She could not state her name or take the oath and,
according to the prosecutor=s comments during questioning, was on the
verge of tears.  After a brief recess, the prosecutor again attempted to elicit
testimony.  E.G. was reluctant to speak, answering most questions, even basic
ones such as her name and age, by shaking her head or shrugging her shoulders. 
E.G. indicated she was scared, and the trial court called another recess.  When
court resumed ten minutes later, appellant made a competency objection, and the
trial court examined E.G. and found her competent to testify.  Questioning
resumed with little improvement in E.G.=s ability to
testify.  Finally, after E.G. was able to identify the genital area on a doll,
the following exchanged occurred between E.G. and the prosecutor:

Q.      Has anybody touched you on that part of your
body?

A.      (Shaking head no.)

Q.      Is there anybody that has ever touched you
on that part of your body that you didn=t like?

A.      (Shaking head no.)  No.

Q.      Nobody.  Has anybody hurt you on that part
of your body that you didn=t like?

A.      No.

Q.      Have you told somebody that somebody has
touched you on that part of your body?

A.      No.

Q.      You haven=t told anybody that?  Have you told me that?

A.      No.

Q.      Do you see your dad in the courtroom today?

A.      (Shaking head yes.)

Q.      Can you tell me what color shirt he is
wearing?

A.      Orange.

Q.      Has your daddy ever touched you on that part
of your body beforeC

A.      (Shaking head no.)

Q.      Cwith any part of his body?

A.      (Shaking head no.)

Q.      Did you tell somebody that?

A.      (Shaking head no.)

Q.      Do you not want to talk about it right now?








A.      (Shaking head no.)

Q.      Why not?

A.      (Shrugging shoulders.)

Q.      Does it make you scared?

A.      (Shaking head yes.)

. . . . 

Q.      Okay.  Do you want to talk anymore today?

A.      (Shaking
head no.)

The
State passed the witness, and the defense did not cross-examine E.G. at this
time.

The State then offered the videotape, first as a prior
inconsistent statement and then as substantive evidence under article 38.071 on
the grounds that E.G. was unavailable to testify.  The trial court admitted the
videotape after finding E.G. was unavailable.  The trial court listened to the
parties= arguments
concerning E.G.=s behavior and demeanor and made its own
observations, including noting that she had covered her eyes once, and
concluded as follows:

If you look at what unavailable is defined as, it=s over there in 6, 7 and 8 relevant
factors:  Emotional, the age, maturity, the emotions, stability, psychological
[c]auses, confrontation with the defendant.  And I think that what we just saw
was inability to testify.  I think it=s just plan and simple.  That is what this section is truly
referring to, and what we just saw.

. . . . 

I think [article 38.071] is specifically talking about this exact
circumstance . . . .

So, if you=re introducing the tape, I will let
it in under RuleC Article 38.071, Section 5, based
on my determination under Section 8 of unavailability.[5]








After viewing the videotape, the trial court allowed
appellant to cross-examine E.G.  After being assured by appellant=s counsel that he
only wanted to discuss Ahappy things, good things,@ E.G. became more
responsive and testified coherently about subjects such as school, her friends,
games she likes to play, and cartoons.  He eventually asked E.G. about her
father, and she said she loved and missed him and that he never hurt her or
touched her in a bad way.  She also testified about the events on the day in
question and denied that her mother ever fell asleep while watching television
or left her alone with appellant.  








Appellant contends that the trial court abused its
discretion in finding that E.G. was unavailable because no evidence supports
such a finding.[6] 
Appellant argues that because E.G. was physically present and actually
testified, she could not be unavailable as a matter of law.  We disagree. 
Article 38.071 specifically contemplates that a child can be physically present
and yet unavailable to testify.  See Tex.
Code Crim. Proc. Ann. art. 38.071, ' 1; Mitchell,
2006 WL 3804443, at *3; Laredo, 194 S.W.3d at 639.  Although E.G. opened
up and gave more detailed and responsive testimony later, at the time of the
trial court=s ruling, E.G. had been nonresponsive and afraid.[7] 
The trial court personally observed E.G.=s emotional state,
demeanor, and ability to testify and ruled based on these personal
observations.  When reviewing for abuse of discretion, we afford almost total
deference to the trial court=s determination of historical facts that
the record supports, especially when the findings are based on the evaluation
of credibility and demeanor.  Mitchell, 2006 WL 3804443, at *4.  The
trial court=s findings are supported by the record, and we find
the trial court did not abuse its discretion in ruling that E.G. was
unavailable and admitting the videotape.  See id. at *4B5 (finding trial
court did not abuse its discretion in making unavailability determination based
on judge=s observations of
child=s emotional state
and ability to testify).  Therefore, we overrule appellant=s second issue.

C.  Impeachment of E.G. 

In his third issue, appellant claims the trial court
improperly limited his ability to develop evidence to impeach E.G.  We review a
trial court=s evidentiary rulings for an abuse of discretion.  Martin
v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  We will uphold the
trial court=s ruling as long as it is within the zone of
reasonable disagreement.  Id.








 First, appellant complains the trial court inappropriately
refused to allow him to elicit testimony regarding two allege instances of E.G.
making prior false sexual abuse allegations.  In Lopez v. State, 18
S.W.3d 220, 225 (Tex. Crim. App. 2000), the Court of Criminal Appeals
recognized that although such evidence is generally inadmissible, the
Confrontation Clause requires its admission in some cases.  However, the
protections of the Confrontation Clause do not apply to probation revocation
proceedings.  Trevino v. State, No. 14-06-00265-CR, __ S.W.3d __, 2007
WL 470549, at *3 (Tex. App.CHouston [14th Dist.] Feb. 15, 2007, no
pet. h.).  Therefore, Confrontation Clause concerns cannot make evidence of
alleged prior false allegations admissible in this case.  Even without this
obstacle, as the trial court specifically noted, there is no evidence in the
record[8]
that E.G., as opposed to her parents, actually made these allegations, and thus
impeachment of E.G. in this manner would have been improper.  See Lape v.
State, 893 S.W.2d 949, 956 (Tex. App.CHouston [14th
Dist.] 1994, pet. ref=d).

Second, appellant complains the trial court improperly
limited his ability to develop evidence that E.G. lied in the videotape
interview when she stated that her grandmother had choked her mother.  However,
E.G. testified on cross-examination that Ibanez never choked her mother. 
Further, during her testimony, Ibanez also denied choking E.G.=s mother.  Thus,
appellant had sufficient evidence to impeach E.G. on this issue, and any
further evidence would have been cumulative.  See Tex. R. Evid. 403 (giving trial court
discretion to exclude cumulative evidence); Ho v. State, 171 S.W.3d 295,
304 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d) (AThe trial court
has the discretion to limit the scope of cross-examination to avoid harassment,
prejudice, confusion of the issues, endangering the witness, and the injection
of cumulative or collateral evidence.@).

We conclude the trial court did not abuse its discretion in
limiting appellant=s presentation of impeachment evidence,
and thus we overrule his third issue.

D. 
Cross-Examination of Psychologist

Appellant=s expert psychologist, Dr. Brown,
testified, after examining appellant and studying his file, that he could find
no psychological explanation for why appellant would commit indecency with a
child.  He based this ultimate conclusion on a series of underlying findings,
including, among others, that appellant (1) had no difficulties controlling
negative impulses or use of aggression, (2) had no history of child molestation
or sexual assault, (3) had a clear sense of moral right and wrong, and (4)
demonstrated he was able to respect rules and conform to social expectations. 
During cross-examination, the State questioned Dr. Brown about appellant=s criminal record,
including the fact that he was on probation for sexual assault and had
previously been convicted of criminal mischief, unlawfully carrying a weapon,
and theft by receiving.  








In his fourth issue, appellant asserts that the State used
its cross-examination of Dr. Brown to improperly impeach him with prior
offenses in violation of Texas Rules of Evidence 609.  We disagree.  The State
was entitled to cross-examine Dr. Brown regarding the facts and data he relied
on, or was aware of but did not rely on, in forming his opinions.  See
Wheeler v. State, 67 S.W.3d 879, 883 (Tex. Crim. App. 2002).  Appellant=s criminal history
was directly relevant to challenging several of Dr. Brown=s underlying
findings leading to his ultimate conclusion.  See id. at 884 (allowing
cross-examination of expert CPS worker regarding allegation that defendant had
molested his niece).  Thus, we conclude the trial court did not abuse its
discretion in allowing the State to cross-examine Dr. Brown regarding appellant=s criminal
history, and we overrule his fourth issue.

                                                   Conclusion

Having overruled appellant=s four issues, we
affirm the trial court=s judgment.

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed May 22, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.

Do Not
Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant objected to this testimony on both hearsay
and Confrontation Clause grounds.  However, he raises no issue regarding the
admissibility of this evidence on appeal.





[2]  Appellant argues that if appellate review is to have
any meaning, we must reassess the credibility of the witnesses and re-weigh the
evidence to determine if the State has met its burden of proof.  We disagree. 
By asking us to re-weigh the evidence, appellant essentially asks us to conduct
a factual sufficiency review, but this court has unequivocally held that a
factual sufficiency review is not available in the probation revocation
context.  See Joseph, 3 S.W.3d at 642.  Rather, we review for abuse of
discretion.  Rickels, 202 S.W.3d at 763; Moore,
11 S.W.3d at 498.  We review the evidence
in the light most favorable to the trial court=s finding and determine if the trial court acted reasonably.  See
Rickels, 202 S.W.3d at 763B64; Garrett, 619 S.W.2d at
174; Moore, 11 S.W.3d at 498; Joseph, 3 S.W.3d at 640.  It is the trial court=s role to make credibility determinations and resolve
evidentiary conflicts.  See Garrett,
619 S.W.2d at 174; Moore, 11 S.W.3d at 498.  If the trial court made reasonable decisions in assessing
credibility and resolving conflicts in the testimony, and if viewing the
evidence in the light of such determinations the trial court could reasonably
believe that, more likely than not, appellant violated his probation, we must
uphold the trial court=s decision.  See Rickels, 202 S.W.3d at 763B64; Moore, 11 S.W.3d at 498.  Thus, although we employ a highly deferential
standard of review, the trial court is not accorded absolute discretion to revoke
probation.  See Scamardo v. State, 517 S.W.2d 293, 297 (Tex. Crim. App.
1974).





[3]  The State, citing authority regarding sufficiency
reviews of criminal convictions, argues that even if the videotape was
inadmissible, we must still consider it in our sufficiency review here.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).  We need not
determine whether this principle applies in the probation revocation context
because even without considering the videotape, we conclude sufficient evidence
supports the trial court=s finding.  Thus, we will not discuss the videotape in
our analysis of appellant=s first issue.





[4]   Appellant notes in his brief that it is Aquestionable@
whether the Confrontation Clause as interpreted by Crawford v. Washington,
541 U.S. 36 (2004), allows us to consider outcry testimony as substantive
evidence of guilt and suggests that we consider such evidence only for impeachment
purposes.  Pointing out a potential issue is insufficient to place that issue
before us for consideration.  Further, the Confrontation Clause does not apply
to probation
revocation proceedings.  Trevino v. State, No. 14-06-00265-CR, __ S.W.3d
__, 2007 WL 470549, at *3 (Tex. App.CHouston [14th Dist.] Feb. 15, 2007, no pet. h.).





[5]  Appellant argues that the trial court erred in
failing to make an express finding of unavailability under section 8 of article
38.071.  Appellant has cited no authority demonstrating that a trial court=s unavailability finding must be express, and in any
event, we conclude that the above-quoted portion of the transcript shows the
trial court did make an express finding.





[6]  Appellant also contends that the trial court erred
in failing to make specific findings under section 5 of article 38.071, which
sets forth technical requirements for the admissibility of a recording.  After
appellant raised this objection, the trial court stated that it was admitting
the videotape subject to the State proving the necessary requirements, which
the State assured it would do when it called the interviewer to testify. 
Appellant did not re-urge its objection after the interviewer=s testimony and thus waived any error.  See Owens-Corning
Fiberglas Corp. v. Keeton, 922 S.W.2d 658, 661 (Tex. App.CAustin 1996, writ denied) (noting that when trial
court conditionally admits evidence, A[i]f
the condition is not fulfilled by the close of the proponent=s case, the burden is on the opposing party to renew
his original objection by moving to strike the evidence; otherwise the party
waives any error resulting from the conditional admission of the evidence@).





[7]  We assess the trial court=s actions based on the information available to the
court at the time of the ruling.  See In re A.W.P., 200 S.W.3d 242, 245
(Tex. App.CDallas 2006, no pet.) (reviewing trial court=s decision based on evidence before it at the time,
noting appellant had not shown trial court=s
decision was incorrect when made); In re Harvest Cmtys. of Houston, Inc.,
88 S.W.3d 343, 349 (Tex. App.CSan Antonio
2002, no pet.) (stating that we Acan
only consider the record that was before the trial court at the time of the
hearing@ in determining whether the trial court=s ruling was correct).  Moreover, although article
38.071 specifically provides that A[a]
determination of availability under this article can be made after an earlier
determination of unavailability,@ Tex. Code Crim. Proc. Ann. art. 38.071,
' 8(b), appellant never requested that the trial court
reconsider its ruling after the circumstances of E.G.=s testimony changed.





[8]  This includes the sealed files from the Department
of Child Protective services made available to us on appeal.