Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â NO. 07-08-0434-CR
NO. 07-08-0435-CR
NO. 07-08-0436-CR
NO. 07-08-0437-CR
NO. 07-08-0438-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 29, 2009

______________________________


JOE MARVIN SLUTZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NOS. 58,571-E, 58,572-E, 58,573-E, 58,574-E, & 58,575-E; 
HONORABLE DAVID GLEASON, JUDGE




_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Following pleas of not guilty, Appellant, Joe Marvin Slutz, was convicted by a jury
of six separate offenses and assessed the corresponding punishments: (1) Cause No.
58,571-E, sexual assault of a childâtwenty years confinement; (2) Cause No. 58,572-E,
Count Iâaggravated sexual assault of a childâconfinement for life; Count IIâaggravated
sexual assault of a childâconfinement for life; (3) Cause No. 58,573-E, aggravated sexual
assault of a childâconfinement for life; (4) Cause No. 58,574-E, aggravated sexual assault
of a childâconfinement for life; and (5) Cause No. 58,575-E, aggravated sexual assault of
a childâconfinement for life. The trial court ordered the life sentences in Count I and Count
II of Cause No. 58,572-E to run concurrently; the twenty year sentence in Cause No.
58,571-E to run consecutive to the sentence in 58,572-E; the life sentence in Cause No.
58,573-E to run consecutive to the sentence in 58,571-E; the life sentence in Cause No.
58,574-E to run consecutive to the sentence in 58,573-E; and the life sentence in Cause
No. 58,575-E to run consecutive to the sentence in 58,574-E.
Factual Background
Â Â Â Â Â Â Â Â Â Â In 2005, Appellant became acquainted with the victim, Jonathan, and his mother,
Tara, when Jonathan was 12 years old. Jonathan had lived most of his life without a
father-figure and Appellant sought to fill that role. He helped Jonathanâs mother by giving
Jonathan rides to school and doing other favors. He was added as an emergency contact
at Jonathanâs school and he allowed Jonathan to use a spare bedroom in his house from
time to time. Jonathan also did odd jobs for Appellant in exchange for gifts. 
Â Â Â Â Â Â Â Â Â Â During the Christmas season in 2006, Appellant and Jonathan went to a Christmas
tree lot operated by Troop 80 of the Boy Scouts of America. Jonathan expressed to
Appellant an interest in joining the scouts program and, in January 2007, they pursued the
idea with Douglas Walker, the Troop 80 committee chairperson. Jonathan immediately
joined and Appellant joined the next month as an assistant scoutmaster. According to
Walker, Appellant gave the impression that he was Jonathanâs stepfather and never
indicated otherwise. 
Â Â Â Â Â Â Â Â Â Â One of the first scouting events Appellant and Jonathan attended was swim night
at an indoor pool. Appellant changed clothes in the boys locker room. After Appellant was
informed that there was a separate locker room for adults, he nevertheless disrobed,
walked around naked, and showered in the boys locker room. According to the testimony
of several witnesses, the boys felt that Appellant was observing them as they showered.
Â Â Â Â Â Â Â Â Â Â Over the course of the next few months, some of the scouts and adult volunteers
observed behavior by Appellant toward other scouts, which although not illegal, did violate
troop policy.


 Although the evidence showed that Appellant did not receive a policy or
procedure manual, the application he signed to join as an assistant scout master contained
information regarding the Boy Scouts of America youth protection policy. Walker also
spoke to Appellant about the youth protection policy after Appellant would not leave the
boysâ tent during a camping trip. At a scouting event in the summer of 2007, a teenage
scout patrol leader observed Appellant pull another teenage scout onto his lap and rub his
chest. The patrol leader reported the conduct to a scoutmaster. Other adult volunteers
also observed the incident and became alarmed. Thereafter, steps were immediately
taken to remove Appellant as an assistant scoutmaster, and he was instructed not to
contact any scouts. According to scoutmaster James Spencer, Appellant reacted to his
expulsion lightly, laughed, and informed Spencer that a scout named Christian would have
to come by his house and âpick up his stuff.â



Â Â Â Â Â Â Â Â Â Â Jonathan eventually left the scout program. He was not a model student and he
suffered from behavioral problems in middle school. According to Glenda Utsey, the
liaison officer for Jonathanâs school cluster, he engaged in fighting, had poor attendance,
and frequent office referrals. He was not, however, a major offender.
Â Â Â Â Â Â Â Â Â Â In early September of 2007, after Appellant had been expelled from Troop 80,
Jonathanâs mother called Spencer to report that Jonathan was upset, crying, and would not
talk to her. She asked him to speak with Jonathan. Accompanied by another
representative of Troop 80, Spencer went to Jonathanâs house one evening to speak with
him. Jonathan had invited a close friend of his, Robert, to be there that evening.


 
According to Spencer, Jonathan was nervous, anxious, upset, and very embarrassed, but
eventually confided in him that Appellant had sexually abused him. They talked until 1:30
the next morning. 
Â Â Â Â Â Â Â Â Â Â Jonathan revealed to Spencer that he and Appellant had engaged in oral sex,
Appellant had anally raped him, and Appellant had watched him while he showered. 
Jonathan also claimed that Appellant threatened to hurt him if he told anyone about the
abuse.


 Spencer recommended to Jonathanâs mother that she get him some professional
help in the form of counseling. According to Spencer, Jonathanâs mother sought financial
assistance from the State for counseling but was unsuccessful due to âpolitical stuff.â He
then recommended an attorney she should consult who might be able to help. 
Â Â Â Â Â Â Â Â Â Â After speaking with Jonathan, Spencer contacted Detective Jeff Higley of the
Amarillo Police Department. He was assigned to investigate the case on September 5,
2007. To gather evidence, Detective Higley arranged for a single party consent call to be
made by Jonathan to Appellant.


 Guided by Detective Higley, Jonathan had the following
telephone conversation with Appellant:
[Jonathan]:Iâm kind of scared.

Â 
[Appellant]: Why?

Â 
[Jonathan]: I told Robert about you touching and sucking my dick, and he
told my mom. She wants me to go take . . . talk to . . take me up to talk to
the cops.



Â Â Â Â Â Â Â Â Â Â [Appellant]: Figures.

Â 
[Jonathan]:What should I tell them.



* * *

Â 
[Jonathan]:What will happen to you if I tell them what you did?



* * *

[Jonathan]: I donât know . . . . Did you do that to Robert, too?

Â 
[Appellant]: I think so . . . once. But, thatâs between Robert and me. Course,
now itâs between you and me. I donât know. Maybe I should go to prison and
die. That would be a good thing.

Â 
[Jonathan]: Whyâd you do that to me?

Â 
[Appellant]: Why did you do it to me?

Â 
[Jonathan]: I never did it to you.

Â 
[Appellant]: laughs OK . . . alright. I donât know. Suppose I . . . I suppose
you could, uh, change the time frame, that it happened while I was, uh, you
know, having back surgery and under. Cause a lot of people came to visit
me, and I donât remember anybody. I remember you and [A]. I donât
remember any of the rest . . . . You could just deny it, itâs up to you. . . . 



* * *

Â 
[Jonathan]: What would happen to you if I told them?

Â 
[Appellant]: I donât know. Lose my business, go to prison. . . . 

Â 
[Jonathan]:Have you done it to anybody else?

Â 
[Appellant]: No.



Â Â Â Â Â Â Â Â Â Â [Jonathan]: Just me and Robert.

Â 
[Appellant]: Yeah. And I donât know why I did that since then either. Maybe
cause itâs been so long since I had [my wife]. Been two years now.





The transcript was read to the jury during Detective Higleyâs testimony. 
Â Â Â Â Â Â Â Â Â Â On September 10, 2007, Appellant was asked to come to the police station for an
interview. When Detective Higley confronted him with the recorded phone call, he laughed. 
He gave a written statement in which he claimed to be nothing more than a âfill-in Dad,â
and denied having any sexual contact with Jonathan. 
Â Â Â Â Â Â Â Â Â Â On September 21, 2007, Jonathanâs mother filed a civil lawsuit against Appellant
on Jonathanâs behalf. She alleged that Appellant coerced Jonathan into an âinappropriate
homosexual relationshipâ and sought actual and punitive damages for various complaints
including, but not limited to, sexual offenses and intentional infliction of emotional distress.
Â Â Â Â Â Â Â Â Â Â A year after the civil suit was filed, Appellant gave his deposition on September 17,
2008.


 During the criminal trial, the State sought to have Exhibits 2 and 3, both excerpts
from Appellantâs civil deposition, introduced into evidence. Based on an extraneous
offense contained in the deposition, defense counsel strenuously lodged relevance
objections and objections pursuant to Rule 404(b) of the Texas Rules of Evidence.


 The
trial court admitted both exhibits and the excerpts were read to the jury.
Â Â Â Â Â Â Â Â Â Â As the excerpts were read, the jury heard denials from Appellant regarding any
inappropriate conduct with Jonathan. In fact, Appellant accused Jonathan of
inappropriately touching him. When questioned whether he had ever had sexual contact
with other males, Appellant answered, âI would say yes, but thatâs really none of anybodyâs
business but mine.â Appellant then alluded to sexual experimentation being something all
males do. The deposition continued:
Q.Have you ever had homosexual sex with another male?

Â 
A. No, sir.

Â 
Q.Okay. And by that, I would include oral sex, anal sex â

Â 
A.Oh, well, oral â oral, yes.

Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â Okay, Have you ever had oral sex with â as an adult with a child?

Â 
A.No, sir. Oh, well, other than with [Robert], and thatâs none of your
business either, but â 

Â 
Q.Whoâs [Robert]?

Â 
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Thatâs a friend of [Jonathanâs].

Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â Okay. So you had oral sex with [Robert]?

Â 
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Uh-huh.



* * *

Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â When was this that you had oral sex with Robert?

Â 
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Right after I had back surgery.

Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â And when was that?

Â 
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â I think it was in May of 2007.

Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â How old was [Robert] at the time?

Â 
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Fourteen.Â 



Appellant again denied any inappropriate sexual conduct with Jonathan.
Â Â Â Â Â Â Â Â Â Â Before Jonathan was called to testify during the criminal trial, the State called Robert
to the stand. Defense counsel reurged his motion in limine objections (Rule 404(b) and
Rule 403), and the trial court instructed the parties to approach before violating the motion
in limine. The State expressed its intent to question Robert about what he told Spencer
the night Spencer visited Jonathanâs house.
Â Â Â Â Â Â Â Â Â Â During his testimony, Robert claimed he did not disclose specifics to Spencer about
Appellantâs conduct and just told him that âstuff that had gone onâ because he did not know
Spencer and felt uncomfortable telling him things. He did, however, testify that he told
Spencer Appellant would make him take his clothes off and shower while he washed his
clothes. Oftentimes, the laundry was not done until the next day and he would sit around
Appellantâs house naked. Some times Appellant was also naked. 
Â Â Â Â Â Â Â Â Â Â Jonathan testified after Robert. According to Jonathan, his relationship with
Appellant became âweirdâ in 2006. Appellant began âtouching, feeling, taking off his shirt
and sitting me on his lap.â The two began engaging in oral sex and according to Jonathan,
about a month later, Appellantâs conduct escalated to anal rape. Jonathan testified that
the threats made by Appellant began after the anal assaults started. Jonathan also
described an incident while he was in the shower in which Appellant got in with him and
washed him and touched his private parts.
Â Â Â Â Â Â Â Â Â Â The final witness to testify for the State was Becky OâNeal, the SANE examiner. 
According to her testimony, Jonathan was extremely uncomfortable with the exam and had
poor eye contact throughout. Jonathan reported that the abuse began in sixth grade and
continued through eighth grade. He claimed to have been anally raped 75 times. OâNeal
did not find any evidence of trauma to Jonathanâs body; however, the exam showed that
Jonathan had suffered multiple penetration of the anus which wore down the area and
healed in the form of a scar. She concluded that Jonathanâs story was consistent with the
results of her exam. 
Â Â Â Â Â Â Â Â Â Â After the State rested, the defense offered its only exhibit in the form of Plaintiffâs
Original Petition in the civil suit filed by Jonathanâs mother. No other evidence was offered
and the defense rested.Analysis
Â Â Â Â Â Â Â Â Â Â By a sole issue, Appellant contends the trial court abused its discretion in admitting
extraneous evidence of him assaulting another child. Specifically, Appellantâs complaints
are directed at the trial courtâs admission of Appellantâs deposition excerpts (Stateâs
Exhibits 2 and 3) and the testimony of Robert. These errors, he maintains, caused him
harm due to the severity of his cumulative sentences. We disagree.
Â Â Â Â Â Â Â Â Â Â I. Â Â Â Â Â Â Â Standard of ReviewâAdmissibility of Evidence
Â Â Â Â Â Â Â Â Â Â We review a trial courtâs ruling admitting evidence for abuse of discretion. Casey
v. State, 215 S.W.3d 870, 879 (Tex. 2007) (citing Montgomery v. State, 810 S.W.2d 372,
391 (Tex.Crim.App. 1990) (op. on rehâg)). A trial court abuses its discretion when its
decision is outside the zone of reasonable disagreement. Green v. State, 934 S.W.2d 92,
102 (Tex.Crim.App. 1996). Otherwise we are required to uphold a trial courtâs admissibility
decision. Montgomery, 810 S.W.2d at 391.
Â 

Â Â Â Â Â Â Â Â Â Â II.Â Â Â Â Â Â Â Extraneous Offense Evidence
Â Â Â Â Â Â Â Â Â Â Rule 404(b) of the Texas Rules of Evidence provides that extraneous offense
evidence is not admissible to prove the character of a person in order to show action in
conformity therewith. Tex. R. Evid. 404(b). However, it is not rendered inadmissible if the
extraneous offense evidence is relevant to a fact of consequence apart from its tendency
to show conduct in conformity with character. Johnston v. State, 145 S.W.3d 215, 221-22
(Tex.Crim.App. 2004). 
Â Â Â Â Â Â Â Â Â Â Rule 403 provides in part that relevant evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. 
Relevant evidence is generally admissible. Tex. R. Evid. 402. In keeping with the
presumption of admissibility of relevant evidence, trial courts should favor admission in
close cases. Casey, 215 S.W.3d at 879. 
Â Â Â Â Â Â Â Â Â Â For extraneous offense evidence to be admissible under both Rule 404(b) and Rule
403, that evidence must satisfy the following two-prong test:
âIs the extraneous offense evidence relevant to a fact of consequence
in the case apart from its tendency to prove conduct in conformity with
character?
âIs the probative value of the evidence sufficiently strong so that it is
not substantially outweighed by unfair prejudice?
Â 
See Johnston, 145 S.W.3d at 220. 
Â Â Â Â Â Â Â Â Â Â âProbative valueâ refers to the inherent probative force of an item of evidenceâthat
is, how strongly it serves to make more or less probable the existence of a fact of
consequence to the litigationâcoupled with the proponentâs need for that evidence. 
Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006). âUnfair prejudiceâ refers
to a tendency to suggest decision on an improper basis, commonly, though not
necessarily, an emotional one. Id. Only unfair prejudice provides the basis for exclusion
of relevant evidence. Montgomery, 810 S.W.2d at 389.
Â Â Â Â Â Â Â Â Â Â In our review, we presume that probative value substantially outweighs the danger
of unfair prejudice. Id. Thus, the defendant bears the burden to demonstrate that the
danger of unfair prejudice substantially outweighs the probative value of evidence. Poole
v. State, 974 S.W.2d 892, 897 (Tex.App.âAustin 1998, pet. refâd). In reviewing a trial
courtâs Rule 403 ruling, we are to reverse the judgment ârarely and only after a clear abuse
of discretion.â Mozon v. State, 991 S.W.2d 841, 847 (Tex.Crim.App. 1999).
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Rule 404(b)
Â Â Â Â Â Â Â Â Â Â In support of offering excerpts of Appellantâs deposition and the testimony of Robert,
the State relied on Powell v. State, 63 S.W.3d 435 (Tex.Crim.App. 2001). In Powell, the
Court reversed the appellate courtâs decision reversing the trial court for abusing its
discretion in admitting extraneous offense evidence. Id. at 436. At trial, the defense
presented its theory during its opening statement that the defendant could not have
molested the child victim because of the presence of his daughters and others who slept
in the living room. Id. at 436-37. This theory was also advanced during cross-examination
of the victim. The victim testified that she was never alone with the defendant. During its
case-in-chief, the State contravened the defensive theory with four witnesses who testified
that the defendant had molested them under almost identical circumstances as the
charged offense. Id. at 437.
Â Â Â Â Â Â Â Â Â Â The defense presented testimony from dozens of girls who spent the night at the
defendantâs house without anyone being molested. Id. The State then rebutted that
evidence with two additional witnesses who testified similar to the four who had already
testified during the Stateâs case-in-chief. Id. On appeal, the defendant argued the trial
court erroneously admitted the testimony of the Stateâs six witnesses because their
testimony was admitted solely for the purpose of character conformity, to-wit: the
defendant is a child molester. Id. 
Â Â Â Â Â Â Â Â Â Â The relevant inquiry under the facts of Powell was whether the evidence was
admissible for its non-character conformity purpose. Id. at 439. Such evidence was
admissible to rebut a defensive theory which gave the evidence relevance apart from
character conformity. Id. The Powell Court added that the trial courtâs limiting instruction
clearly showed the evidence was admitted for its non-character conformity purpose. Id.



Â Â Â Â Â Â Â Â Â Â Some years after Powell, the Court decided in Bass v. State, 270 S.W.3d 557, 563
(Tex.Crim.App. 2008), that case law supports a decision that a defense opening statement
may open the door to the admission of extraneous offense evidence to rebut the defensive
theory presented in the defense opening statement.


 In Bass, defense counsel alleged
in his opening statement that the victimâs allegations of molestation were âpure fantasyâ
and âpure fabrication.â Id. at 557. Defense counsel continued that the allegations were
contrary to the defendantâs character because he was a pastor and minister; âhe is the real
deal and the genuine article.â Id. at 558. During its case-in-chief, the State was permitted
to present extraneous offense evidence of other girls who had been molested in the
defendantâs church office. Id. at 558-59.
Â Â Â Â Â Â Â Â Â Â Bass complained on direct appeal that the extraneous offense evidence was
inadmissible under Rule 404(b) because it was offered solely for the purpose of character
conformity. Id. at 562. The appellate court held the trial court abused its discretion in
admitting the evidence to rebut a âfabricationâ defense even though the evidence would
have been admissible to rebut a âframe-upâ or âretaliationâ defense. Bass v. State, 222
S.W.3d 571, 575-78 (Tex.App.âHouston [14th Dist.] 2007). Finding no categorical
distinctions between âfabricationâ defenses and âframe-upâ or âretaliationâ defenses, the
Court of Criminal Appeals concluded the trial court did not abuse its discretion in admitting
the extraneous offense evidence to rebut the defensive theory of fabrication and reversed
the appellate court. Bass, 270 S.W.3d at 563.
Â Â Â Â Â Â Â Â Â Â In the instant case, the defense made its opening statement immediately after the
Stateâs opening statement. Defense counsel recalled the movie âWall Streetâ and quoted
the main character saying, âgreed is good, greed is the American way.â Counsel continued
with his defensive theory that Jonathanâs allegations against Appellant were motivated by
money. Counsel then mentioned the civil lawsuit for monetary damages to which the State
objected as being improper opening argument. The trial court overruled the Stateâs
objection and defense counsel continued to talk about the civil lawsuit. âThe evidence is
going to show in this case that shortly after the Boy Scouts said [Appellant] get out, that an
opening was seen, a chance to get money was seen.â Counsel then suggested that
Jonathanâs allegations worsened as the civil lawsuit progressed. In his closing argument,
defense counsel reiterated the theory that the civil lawsuit for damages was the motive
behind the allegations Jonathan made against Appellant.
Â Â Â Â Â Â Â Â Â Â The defense waved the lawsuit in the face of the jury during opening argument, yet
vehemently objected during trial when the State offered excerpts from Appellantâs civil
deposition. Under Bass, the defense opening statement opened the door to admission of
extraneous offense evidence. 270 S.W.3d at 558. The defense was theorizing that
Jonathan fabricated the allegations against Appellant. By offering the excerpts from
Appellantâs deposition in which he admitted to performing sexual acts with Robert, and by
offering Robertâs testimony that âstuff had gone onâ with Appellant, the State was
attempting to show that Appellantâs claim of fabrication-for-money defense was less
probable. By showing that the allegations were less likely to be fabricated, the extraneous
offense evidence directly rebutted Appellantâs defensive theory and had logical relevance
apart from character conformity. Id. at 562-63.
Â Â Â Â Â Â Â Â Â Â Additionally, the trial court gave the jury the following limiting instruction in all five
charges: 
[Appellant] is on trial solely on the charge contained in the indictment. In
reference to evidence, if any, that [Appellant] has previously participated in
recent transactions or acts, other than that which is charged in the indictment
in this case, you are instructed that you can not consider such other
transactions or acts, if any, for any purpose unless you find and believe
beyond a reasonable doubt that [Appellant] participated in such transactions
or committed such acts, if any; and even then you may only consider the
same for the purpose of determining intent or knowledge or motive or
opportunity or preparation or plan or identity or absence of mistake or
accident, if it does, and for no other purpose.
Â 
Â Â Â Â Â Â Â Â Â Â Appellant relies on Daggett v. State, 187 S.W.3d 444 (Tex.Crim.App. 2005), in
which the Court found error in the admission of extraneous offense evidence which was
similar to the charged offense and reversed the case and remanded it for a harm analysis. 
Daggett, however, involved the âplanâ exception to the admission of extraneous offense
evidence and not evidence to rebut a defensive theory. Additionally, the courtâs limiting
instruction in Daggett, when considered with the Stateâs closing argument, improperly
permitted the jury to consider the challenged evidence for its substantive value. We
choose to apply Bass, a more recent pronouncement from the Court of Criminal Appeals,
which permits the admission of extraneous offense evidence to rebut the defensive theory
of fabrication. 270 S.W.3d at 562-63.
Â Â Â Â Â Â Â Â Â Â We conclude that the extraneous offense evidence had relevance apart from
character conformity. Thus, we must now evaluate the evidence under Rule 403 to see
if its probative value outweighed its prejudicial effect. 
Â Â Â Â Â Â Â Â Â Â B.Â Â Â Â Â Â Â Rule 403
Â Â Â Â Â Â Â Â Â Â While evidence may be admissible under Rule 404(b), the trial court may exercise
its discretion to exclude the evidence if its probative value is substantially outweighed by
the danger of unfair prejudice. Moses v. State, 105 S.W.3d 622, 626 (Tex.Crim.App.
2003). The trial court must balance (1) the inherent probative force of the proffered item
of evidence along with (2) the proponentâs need for that evidence against (3) any tendency
of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence
to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the probative force
of the evidence, and (6) the likelihood that presentation of the evidence will consume an
inordinate amount of time or repeat evidence already admitted. See Casey, 215 S.W.3d
at 879.
Â Â Â Â Â Â Â Â Â Â Based on a review of the entire record, we find the deposition excerpts and Robertâs
testimony were strongly probative to rebut the defensive theory that Jonathan fabricated
the allegations. Thus, as proponent of the evidence, the State established a need for the
evidence. Although the evidence could have had a tendency to suggest conviction on an
improper basis, the trial court properly instructed the jury on the limited purpose for which
the extraneous offense evidence was admitted. The evidence was not the sort that would
have caused confusion or distraction of the main issue. Finally, Robertâs testimony was
very brief compared to that of eight other witnesses, and the reading of the two deposition
excerpts which amounted to approximately sixteen pages of text from a record containing
multiple volumes and hundreds of pages did not consume an inordinate amount of time. 
Viewing the totality of the factors, we conclude the trial court did not abuse its discretion
in admitting the challenged extraneous offense evidence. Appellantâs sole issue is
overruled.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Conclusion
Â Â Â Â Â Â Â Â Â Â The trial court did not abuse its discretion in admitting Stateâs Exhibits 2 and 3 and
the testimony of Robert to rebut Appellantâs defensive theory that Jonathan had fabricated
the allegations against him for financial gain from a civil lawsuit. 
Â Â Â Â Â Â Â Â Â Â Consequently, the trial courtâs judgments are affirmed.Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice





Do not publish.

Â 








Symbols"'>=s wife during the
punishment phase of the hearing.

Appellant=s community
supervision officer testified that under the terms of appellant=s community
supervision, he was required to: (1) work at least eight hours per week toward
his required 160 hours of community service until the completion date of August
15, 2007; and (2) to remain within the confines of Deaf Smith and Oldham
Counties and not to leave without written permission of the court.  The supervision officer testified appellant
completed only seven hours of his community service requirement from the time
he was placed on probation in January 2007 and that he completed these hours at
the Alcoholics Anonymous building.Â  The
officer testified that he repeatedly explained the requirements, assured
himself of appellant=s understanding of the requirements, and
attempted to place appellant in a community service project that was convenient
for him.Â  The officer testified that
according to his records for the months of February, March, April, and May
2007, appellant had not completed any community service hours and completed
only seven in the month of June 2007. Appellant did not complete any hours in
July or August 2007.

Appellant=s community
supervision officer also testified appellant never requested that he be given a
travel permit to go to El Paso, Texas.Â 
The officer also indicated he spoke with appellant about that issue on
August 2, 2007.Â  A Deaf Smith County
police officer identified appellant in the courtroom and testified that on or
about July 25, 2007, he left Deaf Smith County and traveled to El Paso County
to transport appellant back to Deaf Smith County. On cross-examination, the
officer indicated the actual date was July 30, 2007.Â  Appellant was in custody in El Paso at the
time the officer retrieved him. 

The court heard
this evidence, considered the arguments of counsel, and found the State=s allegations to
be true.Â  The court then heard punishment
evidence and sentenced appellant to five years of imprisonment.Â  This appeal followed.

Analysis

Failure to Provide
Written Statement Concerning Grounds for Revocation

In his first
issue, appellant argues the trial court erred in failing to provide a written
statement as to the evidence relied on and the reasons for revoking community
supervision, thereby violating appellant=s due process
rights.Â  We disagree.[3]

Due process in the
revocation context requires: (1) a hearing; (2) written notice of the claimed
violations; (3) disclosure of the evidence against the defendant; (4) an
opportunity to be heard and to present witnesses and documentary evidence; (5)
a neutral hearing body; and (6) Aa written statement
by the fact finder as to the evidence relied on and the reasons for revoking
probation.@Â  Carmona
v. State, 185 S.W.3d 492, 495 (Tex.Crim.App. 2006), citing Gagnon v.
Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).Â  When a defendant timely requests the entry of
specific findings of fact on which revocation is based, the trial court errs in
failing to enter such findings of fact.Â  Whisenant v. State, 557 S.W.2d 102, 105 (Tex.Crim.App.
1977); Joseph v. State, 3 S.W.3d 627, 639 (Tex.App.BHouston
[14th Dist.] 1999, no pet.).Â 
The failure to make the requested findings may require reversal if their
omission impedes appellate review of the revocation.Â  Joseph, 3 S.W.3d at
639, citing Ford v. State, 488 S.W.2d 793, 795 (Tex.Crim.App. 1972).Â  However, the trial court is not required to
issue separate findings if the judgment or revocation order discloses the
grounds for revocation found by the court.Â 
See Joseph, 3 S.W.3d at 640 (concluding that handwritten
notations on the revocation order sufficed).








Here, the record
reflects appellant did not request the entry of specific findings of fact.Â  The judgment listed the conditions violated
by paragraph number and description of the condition. The record also reflects the
trial court orally specified the particular conditions violated and their
factual bases at the end of the revocation hearing, finding each of the two
violations Atrue.@Â  The court=s written judgment
recites, A[t]he Court, after hearing all of the
evidence for the State and the Defendant and arguments of counsel, was of the
opinion and found that the Defendant violated the conditions of community
supervision as stated above.@Â  Thus, the record shows appellant was afforded
adequate notice of the grounds underlying the court=s revocation, and
his ability to prosecute an appeal was not diminished by the absence of further
findings.Â  See Reasor v. State, 281 S.W.3d 129 (Tex.App.BSan
Antonio 2008, no pet.) We overrule appellant=s first issue.








Notice in State=s First Amended
Motion to Revoke








In appellant=s last issue, he
contends his due process rights were violated because the State=s amended motion
stated that A[t]he defendant probationer [appellant]
failed to remain within the confines of Deaf Smith County, Texas in violation
of Article 13 of his probated sentence.Â 
He was in El Paso, Texas on or about July 25, 2007.@Â  However, testimony at trial indicated
appellant was transported on July 30, 2007.Â Â 
Appellant never claimed surprise or requested a continuance of the
hearing based on the different dates.Â 
Nevertheless, appellant now argues the difference in the dates
constitutes a material variance that violated appellant=s due process
rights because the motion did not provide notice of the charges against
appellant.

Â Â Â Â Â Â Â Â Â Â Â  We find the State=s motion provided
adequate notice of the charges against appellant.Â  Due process entitles probationers facing a
revocation proceeding to written notice of their alleged violations.Â  Ruedas v. State, 586
S.W.2d 520, 523 (Tex.Crim.App. 1979), citing Gagnon, 411 U.S. at 778; Weed
v. State, 891 S.W.2d 22, 24 n.4 (Tex.App.BFort
Worth 1995, no writ).Â  An application
to revoke need not meet the specificity requirements of an indictment or
information; it is sufficient that the State allege a violation of the law and give
the probationer fair notice.Â  Pierce
v. State, 113 S.W.3d 431, 436 (Tex.App.ÂTexarkana 2003), citing Chacon
v. State, 558 S.W.2d 874, 876 (Tex.Crim.App. 1977).Â  See also Poteet v. State, No.
07-06-0238-CR, 2008 WL 2579675, *2 (Tex.App.BAmarillo
June 27, 2008, no pet.) (mem. op., not designated
for publication).








It is well
established that the State may allege the commission of an offense Aon or about@ a certain date,
and this allegation allows the State to prove any date that is anterior to
presentment and within the statutory limitations period.Â  See Garcia v. State, 981 S.W.2d 683,
685-86 (Tex.Crim.App. 1998); Sledge v. State, 953 S.W.2d 253, 256
(Tex.Crim.App. 1997); Ferrell v. State, 968 S.W.2d 471, 473 (Tex.App.BFort
Worth 1998, pet. ref=d).Â  An indictment that alleges an Aon or about@ date puts a
defendant on notice that he must be prepared to defend against the alleged act
of criminal misconduct within the applicable statute of limitations.Â  See Garcia, 981
S.W.2d at 686; Ferrell, 968 S.W.2d at 473; Kosick v. State, No.
02-06-056-CR, 2007 WL 2460351 (Tex.App.BFort Worth Aug. 31, 2007, no pet.) (mem. op.,
not designated for publication).Â  Given
the less restrictive requirements that apply in a
revocation hearing, we find the same principle applies to motions to revoke. See Pierce, 113 S.W.3d
at 436. See also Mauney v. State, 107
S.W.3d 693, 695 (Tex.App.ÂAustin 2003, no pet.), citing Labelle v. State, 720 S.W.2d 101, 104 (Tex.Crim.App. 1986)
(the State is free to prove a violation occurred any time before the filing of
the motion to revoke and during the probation period so long as the State
pleads the violation occurred Âon or aboutÂ a specified date and that it
occurred while the defendant was on probation).Â 
Therefore,
the State=s allegation of Aon or about July
25, 2007" encompasses the date of July 30, 2007, on which the police
officer retrieved appellant from El Paso, Texas.Â  We find no due process violation as the
motion provided adequate notice of the term appellant was alleged to have
violated.Â  We overrule appellant=s last issue.

Reformation of
Judgment

Â Â Â Â Â Â Â Â Â Â Â  In our
review of the record, it came to our attention that the judgment nunc pro tunc
includes a clerical error.Â  The judgment
indicates appellant plead ÂtrueÂ to the StateÂs allegations.Â  The reporterÂs record indicates appellant
plead Ânot trueÂ to the StateÂs allegations.Â 


Â Â Â Â Â Â Â Â Â Â Â  This court has the power
to modify the judgment of the court below to make the record speak the truth
when we have the necessary information to do so. Tex. R. App. P.
43.2(b); Bigley v. State, 865 S.W.2d 26, 27-28 (Tex.Crim.App.
1993); Asberry v. State, 813 S.W.2d 526, 529-30
(Tex.App.--Dallas 1991, pet. ref'd).
"The authority of an appellate court to reform an incorrect judgment is
not dependent upon the request of any party, nor does it turn on the question
of whether a party has or has not objected in the trial court." Asberry, 813 S.W.2d at
529-30.

Because the record unambiguously indicates
appellant plead Ânot trueÂ to the StateÂs allegations, we modify the judgment
nunc pro tunc to correct the error.Â  As
modified, we affirm the judgment of the trial court.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

James T.
Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Do not
publish.











[1]Â 
See Tex. Penal Code Ann. ' 49.09 (Vernon
2007).





[2]Â 
The
record indicates the State waived this allegation because there was a pending
case on that offense at the time of this hearing.Â  





[3]
We address
issues one and three raised by appellant but we do not address issue two.Â  In his second issue, appellant complains of
the sufficiency of the evidence only with regard to the allegation concerning
his failure to complete his community swevice.Â 
Even if we were to agree with appellant on his second point, proof of
one violation is sufficient to revoke community supervision. See Moore v.
State, 605 S.W.2d 924, 926 (Tex.Crim.App. 1980) (panel op.); Trevino v.
State, 218 S.W.3d 234, 240 (Tex.App.BHouston [14th
Dist.] 2007, no pet.) citing Greer v.
State, 999 S.W.2d 484, 486 (Tex.App.BHouston [14th
Dist.] 1999, pet.
ref=d).Â  With regard to the StateÂs allegation
concerning appellantÂs failure to remain within the confines of Deaf Smith and
Oldham Counties, appellant complains only of the lack of notice in the StateÂs
motion.